IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BLUEFIELD DIVISION

| | |
|---|---|
| JEREMY J. HUNT, | ) |
| | ) |
| Plaintiff, | ) |
| v. | )   Civil Action No. 1:19-00356 |
| | ) |
| MS. M. CARVER, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**PROPOSED FINDINGS AND RECOMMENDATION**

On June 5, 2019, and September 16, 2019, Plaintiff filed his Applications to Proceed Without Prepayment of Fess or Costs. (Document Nos. 5 and 16.) On July 19, 2019, Plaintiff filed his Second Amended Complaint for alleged violations of his constitutional and civil rights pursuant to Bivens v. Six Unknown Federal Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 24 L.Ed.2d 619 (1971).[1] (Document No. 12.) In his Second Amended Complaint, Plaintiff names the following as Defendants: (1) Ms. M. Carver, Acting Warden of FCI McDowell; (2) Mr. Rich, Assistant Warden of FCI McDowell; (3) Mr. Mehle, Lieutenant at FCI McDowell; (4) Mr. Halsey, Lieutenant at FCI McDowell; (5) Mr. Martin, Lieutenant at FCI McDowell; (6) Mrs. Rife, Case Manager Coordinator at FCI McDowell; (7) Mr. Pilaunt, B-Unit Manager at FCI McDowell; (8) Mr. Johnson, B-Unit Manager at FCI McDowell; (9) Mr. Stock, B-Unit Counselor at FCI McDowell; (10) Medical Administrator Moore, FCI McDowell; (11) Ms. Coppillo, Physician Assistant at FCI McDowell; (12) Mr. William Goode, Physician Assistant at FCI McDowell; (13) Veronica Brown, Dentist at FCI McDowell; and (14) The

---

[1] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

Captain at FCI McDowell. (Id., pp. 1 – 2.) Plaintiff alleges that Defendants violated his constitutional rights based upon the following: (1) Denying Plaintiff telephone privileges; (2) Denying Plaintiff adequate dental care and medical care for "skin sores on his hand and knees;" (3) Denying Plaintiff access to the administrative remedy process; and (4) Subjecting Plaintiff to cruel and unusual conditions of confinement in the Special Housing Unit ["SHU"]. (Id., p. 4.)

Concerning Plaintiff claim of the denial of telephone privileges, Plaintiff states that he has not be allowed to make one phone call since he was placed in FCI McDowell on August 22, 2018. (Id., pp. 5 - 6.) Plaintiff explains that he has no disciplinary reasons for the denial of telephone privileges and he is entitled to at least one phone call per month under BOP policy. (Id.) Plaintiff states that Unit Manager Rife explained that Plaintiff's telephone access was denied because Plaintiff has a Public Safety Factor for Serious Telephone Abuse that was applied to Plaintiff when he entered the BOP. (Id.) Plaintiff complains that even though Unit Manager Rife told Plaintiff she would submit a request to the Warden for Plaintiff to be allowed telephone access, Plaintiff contends that Unit Manager Rife never submitted the "paperwork" and his Public Safety Factor has never been reviewed pursuant to BOP policy. (Id.) Plaintiff further argues the underlying conduct for telephone abuse occurred in 2013 when he was in State custody, and such should not be used against Plaintiff while he is in BOP custody. (Id.) Plaintiff complains that he was not allowed to call his grandmother, who passed away on June 16, 2019. (Id., p. 7.) Plaintiff states that his grandmother was his "primary caregiver as a juvenile" and her death has caused him "lots of pain, stress, and depression." (Id.) Plaintiff further complains that he has not been allowed to call his 11-year old daughter for the last ten months, which has caused "a lot of stress on my daughter, my wife, and me." (Id.) Plaintiff states that Mr. Pilaunt

became Plaintiff's Unit Manager in March 2019, and Unit Manager Pilaunt has also denied Plaintiff telephone access and failed to submit "paperwork" to the Warden to review Plaintiff's telephone restriction. (Id., pp. 7 – 8.) Plaintiff states that he submitted an administrative remedy request concerning review of his telephone restriction to Case Manager Johnson on April 25, 2019, but Plaintiff was never provided with a response. (Id., p. 8.) Finally, Plaintiff alleges that he notified Assistant Warden Rich of his telephone restriction and request for review, but no action was taken by Assistant Warden Rich. (Id., p. 8.) Plaintiff, therefore, concludes that Mrs. Rife, Mr. Pilaunt, Mr. Johnson, and Mr. Rich violated his constitutional rights by denying Plaintiff telephone access. (Id.)

Concerning his inadequate medical care claim, Plaintiff first alleges that he did not receive adequate medication following the removal of his wisdom teeth on January 10, 2019. (Id., p. 9.) Plaintiff alleges that the oral surgeon prescribed Motrin and Augmentin, but Dr. Brown only provided Plaintiff with Ibuprofen – not Augmentin. (Id.) Plaintiff alleges that on January 16, 2019, he suffered from a swollen mouth and neck, pain in his neck and cheek area, swollen lymph nodes, difficulty swallowing, and a "pounding headache." (Id.) Plaintiff states that he reported the above symptoms to Correctional Officers in SHU, and Lt. Martin informed Plaintiff that "no medical staff were present" but he would email medical to come to see Plaintiff first thing in the morning. (Id.) Plaintiff complains that medical never came to see him. (Id.) Plaintiff states that he did not receive the Ibuprofen until January 26, 2019, at 1:45 p.m. from RN Walters. (Id.) Plaintiff alleges that despite submitting numerous sick call requests for multiple problems, including his "skin sores," medical did not come to see him until May 2, 2019. (Id., pp. 10 - 11.) Plaintiff acknowledges that medical staff diagnosed him with dry skin on May 2,

3

2019, and instructed Plaintiff to buy Dove soap from the commissary. (Id.) Plaintiff, however, complains that he was only allowed to purchase the Dove soap on one occasion, and SHU staff is now prohibiting all "white soap bars in SHU." (Id.) Plaintiff further complains that medical has not prescribed any other treatment for his skin problems and his rash is "spreading and is getting worse." (Id.) Plaintiff alleges that although RN Walters put Plaintiff on the list to be evaluated by PA Goode, PA Goode failed to properly follow up with Plaintiff. (Id., p. 12.) Plaintiff alleges that PA Goode stopped working at FCI McDowell around March 20, 2019, and "I believe since he was leaving McDowell that he was careless in his duties for failing to ensure I received medical care because he was no longer going to be at McDowell, and he violated my right to receive medical care by not coming to see me when he was emailed by Lt. Martin and AW Carver and not responding to my sick call requests." (Id.) Plaintiff alleges that he was next assigned to PA Coppillo, who treated Plaintiff from around March 20, 2019, until June 2019. (Id.) Plaintiff alleges that PA Coppillo failed to ensure that Plaintiff received medical care by not responding to his sick call requests and failing to review his medical records to ensure correct treatment for his skin issues. (Id.) Plaintiff alleges that PA Coppillo did not do anything to treat his skin condition for "4 months straight and she quit working at McDowell also." (Id.) Finally, Plaintiff alleges that Medical Administrator Moore and AW Carver failed to ensure that Plaintiff received medical care. (Id.)

Third, Plaintiff alleges that his constitutional rights have been violated because he has been denied access to the administrative remedy process. (Id., p. 13.) Plaintiff alleges that he first attempted to start the administrative remedy process in December 2018, but he never received a response or proper papers to proceed to the next level. (Id.) Plaintiff states that from January

2019 until May 2019, he attempted to get the proper forms to file an administrative remedy, but such forms were not provided until May 13, 2019. (Id.) Plaintiff claims that he notified the Assistant Warden on March 6, 2019, that Plaintiff was being denied access to the administrative remedy process. (Id.) Plaintiff complains that after receiving the administrative remedy form on May 13, 2019, Plaintiff submitted his administrative remedy request on May 22, 2019 concerning the denial of his telephone privileges. (Id.) Plaintiff, however, states that as of July 15, 2019, he had not received "a response or proper papers to proceed to the next level." (Id.) Therefore, Plaintiff concludes that Mrs. Rife, Mr. Pilaunt, Mr. Johnson, Mr. Stock, and Mr. Rich have all violated his constitutional right by not ensuring Plaintiff had access to the administrative remedy process. (Id., p. 14.) Plaintiff further concludes that the Captain, Lt. Mehle, and Lt. Martin denied him access to a black ink pen further preventing Plaintiff from completing his administrative remedy forms. (Id.)

  Finally, Plaintiff alleges that the living conditions in the SHU constitute cruel and unusual punishment in violation of the Eighth Amendment. (Id., pp. 15 – 16.) Plaintiff first complains that his food is served cold "just about every day." (Id., p. 15.) Plaintiff states that the "hamburgers are so cold that there is grease solidified around the hamburger." (Id.) Plaintiff alleges that he has complained to the Captain, Mr. Rich, Lt. Mehle, Lt. Halsey, and several COs concerning being served cold food. (Id.) Second, Plaintiff alleges that he was unable to get a book to read for nine months. (Id., p. 16.) Plaintiff states that he requested a book from Ms. Carver, Mr. Rich, the Captain, and Lt. Mehle, but was not provided one for nine weeks. (Id.) Third, Plaintiff complains that he has been denied dental floss for "6 months straight." (Id.) Plaintiff alleges that his dentist instructed him to floss daily and "not being able to floss will

cause dental decay." (Id.) Plaintiff alleges that he notified Mr. Pilaunt, the Captain, Lt. Halsey, and Lt. Mehle of his need for dental floss, but such was never provided to Plaintiff. (Id.) Fourth, Plaintiff claims that the "ventilation in the SHU is horrible" because the air vents are "clogged from inmates using toothpaste and toilet paper to block the air from coming out." (Id.) Plaintiff further complains that the air vents, desk, doors, and bunks are rusty. (Id.) Finally, Plaintiff complains that he was provided with inadequate supplies, such as the following: (1) No soap from February 25th until March 18th; (2) Only one clean towel from February 12th until February 26th; (3) Only one clean pair of socks from March 3rd until March 20th; and (4) Only 1 sheet and blanket every two seeks from April 27th until July 14th. (Id.) Plaintiff alleges that Lt. Halsey, Lt. Mehle, and Lt. Martin are responsible for the above conditions. (Id., p. 17.) Plaintiff requests monetary and injunctive relief. (Id., p. 18.)

## THE STANDARD

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court is required to screen each case in which a plaintiff seeks to proceed *in forma pauperis*, and must dismiss the case if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. Pursuant to 28 U.S.C. § 1915A, a similar screening is conducted where a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. This screening is done prior to consideration of an Application to Proceed Without Prepayment of Fees and Costs, and notwithstanding the payment of any filing fee. On screening, the Court must recommend dismissal of the case if the complaint is frivolous, malicious or fails to state a claim upon which relief can be granted. A "frivolous" complaint is one which is based upon an indisputably meritless legal theory. Denton v. Hernandez, 504 U.S. 25, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992). A "frivolous" claim lacks "an

arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831 - 32, 104 L.Ed.2d 338 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." Id., 490 U.S. at 327, 109 S.Ct. at 1833. A claim lacks an arguable basis in fact when it describes "fantastic or delusional scenarios." Id., 490 U.S. at 327 - 328, 109 S.Ct. at 1833. A complaint therefore fails to state a claim upon which relief can be granted factually when it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. With these standards in mind, the Court will assess Plaintiff's allegations in view of applicable law.

This Court is required to liberally construe *pro se* documents, holding them to a less stringent standard than those drafted by attorneys. Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); Loe v. Armistead, 582 F.2d 1291, 1295 (1978). Liberal construction, however, "does not require courts to construct arguments or theories for a *pro se* plaintiff because this would place a court in the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." Miller v. Jack, 2007 WL 2050409, at * 3 (N.D.W.Va. 2007)(citing Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir.1978)). Further, liberal construction does not require the "courts to conjure up questions never squarely presented to them." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). In other words, a court may not construct legal argument for a plaintiff. Small v. Endicott, 998 F.2d 411 (7th Cir.1993). Finally, the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a claim currently cognizable in a federal district court. Weller v. Department of Social Servs., 901 F.2d 387 (4th Cir.1990)). Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez,

7

504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992); also see Goode v. Central Va. Legal Aide Society, Inc., 807 F.3d 619 (4th Cir. 2015).

## DISCUSSION

"[F]ederal courts must take cognizance of the valid constitutional claims of prison inmates." Turner v. Safley, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987). A Bivens action is a judicially created damages remedy which is designed to vindicate violations of constitutional rights by federal actors. See Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. at 395-97, 91 S.Ct. at 2004-05; See also Carlson v. Green, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980)(extending Bivens to Eighth Amendment claims); Davis v. Passman, 442 U.S. 228, 239 n. 18, 99 S.Ct. 2264, 2274 n. 18, 60 L.Ed.2d 846 (1979)(extending Bivens to allow citizen's recovery of damages resulting from a federal agent's violation of the Due Process Clause of the Fifth Amendment.) A Bivens action is the federal counterpart of an action under 42 U.S.C. § 1983. An action for money damages may be brought against federal agents acting under the color of their authority for injuries caused by their unconstitutional conduct. Proof of causation between the official's conduct and the alleged injury is necessary for there to be liability. A plaintiff asserting a claim under Bivens must show the violation of a valid constitutional right by a person acting under color of federal law.[2] The

---

[2] Inmates may file claims of liability against the United States under the FTCA but may not assert claims of personal liability against prison officials for violations of their constitutional rights. *Carlson v. Green*, 446 U.S. at 21-23, 100 S.Ct. at 1472 -74. By contrast, under *Bivens* inmates may assert claims of personal liability against individual prison officials for violations of their constitutional rights but may not assert claims against the government or prison officials in their official capacities. The Supreme Court held in *Carlson*, 446 U.S. at 18 - 21, 100 S.Ct. at 1471-72, that an inmate could pursue a *Bivens* action independent of a FTCA action. The Court found that Congress did not intend to pre-empt a *Bivens* remedy when it enacted the FTCA. *Id.* The Court noted that the legislative history of the FTCA "made it crystal clear that Congress views FTCA and *Bivens* as parallel, complementary causes of action." *Id.*, 446 U.S. at 19 - 20,

United States Supreme Court has held that an inmate may name a federal officer in an individual capacity as a defendant in alleging an Eighth Amendment constitutional violation pursuant to Bivens. See Wilson v. Seiter, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). However, Bivens claims are not actionable against the United States, federal agencies, or public officials acting in their official capacities. See FDIC v. Meyer, 510 U.S. 471, 475, 484-86, 114 S.Ct. 996, 127 L.Ed. 2d 308 (1994); Berger v. Pierce, 933 F.2d 393, 397 (6th Cir. 1991); Reinbold v. Evers, 187 F.3d 348, 355 n. 7 (4th Cir. 1999).

1. **Administrative Remedy Process:**

In his Second Amended Complaint, Plaintiff alleges that Defendants Rife, Pilaunt, Johnson, Stock, Rich, the Captain, Mehle, and Martin have violated his constitutional rights by rendering the BOP's Administrative Remedy process unavailable. (Document No. 12, p. 13.) Federal inmates, however, have no constitutional right to participate in the BOP's administrative grievance proceedings. See Adams v. Rice, 40 F.3d 72, 75 (4th Cir.), cert. denied, 514 U.S. 1022, 115 S.Ct. 1371, 131 L.Ed.2d 227 (1994); also see Booker v. South Carolina Dept. of Corrections, 855 F.3d 533 (4th Cir. 2017)("*Adams* establishes a clear rule: inmates have no constitutional entitlement or due process interest in access to a grievance procedure."); Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991)("[T]he federal regulations providing for an administrative remedy procedure do not in and of themselves create a liberty interest in access to that procedure. When the claim underlying the administrative grievance involves a constitutional

---

100 S.Ct. at 1471 -72. Relying upon *Carlson*, the Fourth Circuit found that the availability of relief under the FTCA does not automatically foreclose a *Bivens* action. *Dunbar Corp v. Lindsey*, 905 F.2d 754, 762 (4th Cir. 1990). The Court pointed out other distinctions between FTCA and *Bivens* actions in *Dunbar Corp.*: (1) only compensatory damages are available in FTCA actions, whereas compensatory and punitive damages are available under *Bivens* and (2) FTCA claims must be tried to the Court, whereas *Bivens* claims may be tried to a jury. *Id*.

right, the prisoner's right to petition the government for redress is the right of access to the courts, which is not compromised by the prison's refusal to entertain his grievance.") A BOP employee's refusal to respond to an inmate's administrative complaint, or conduct that otherwise prevents an inmate from pursuing such complaints through the administrative remedy process, making the process unavailable, is not actionable under Bivens. Rather, the legal consequence of conduct which makes the administrative remedy process unavailable to inmates is that the door to federal Court is open to proceedings on the merits of their claims without requiring their exhaustion of administrative remedies. Accordingly, the undersigned finds that Plaintiff's claim that Defendants Rife, Pilaunt, Johnson, Stock, Rich, the Captain, Mehle, and Martin violated his constitutional rights by rendering the BOP's Administrative Remedy process unavailable should be dismissed.

**2.  Eighth Amendment:**

The undersigned views Plaintiff's Second Amended Complaint as setting forth a claim under the Eighth Amendment. As a general matter, punishments prohibited under the Eighth Amendment include those that "involve the unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 103, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976)(quoting Gregg v. Georgia, 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976)). "It not only outlaws excessive sentences but also protects inmates from inhumane treatment and conditions while imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). Under the Eighth Amendment, sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." Wolfish v. Levi, 573 F.2d 118, 125 (2d Cir. 1978), rev'd on other grounds, Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Thus,

sentenced prisoners are entitled to reasonable protection from harm at the hands of fellow inmates and prison officials under the Eighth Amendment. See Farmer v. Brennan, 511 U.S. 825, 832-34, 114 S.Ct. 1970, 1976-77, 128 L.Ed.2d 811 (1994); Trop v. Dulles, 356 U.S. 86, 102, 78 S.Ct. 590, 598-99, 2 L.Ed.2d 630 (1958); Woodhous v. Commonwealth of Virginia, 487 F.2d 889, 890 (4th Cir. 1973). Inmates' claims, therefore, that prison officials disregarded specific known risks to their health or safety are analyzed under the deliberate indifference standard of the Eighth Amendment. See Pressly v. Hutto, 816 F.2d 977, 979 (4th Cir. 1987); Moore v. Winebrenner, 927 F.2d 1312, 1316 (4th Cir. 1991) cert. denied, 502 U.S. 828, 112 S.Ct. 97, 116 L.Ed.2d 68 (1991)(Stating that supervisory liability may be imposed where prison supervisors "obdurately," "wantonly," or "with deliberate indifference" fail to address a known pervasive risk of harm to an inmate's health or safety).

    **A.**    ***Conditions of Confinement.***

To establish a violation of the Eighth Amendment in the context of a challenge to conditions of confinement, an inmate must allege (1) a "sufficiently serious" deprivation under an objective standard and (2) that prison officials acted with "deliberate indifference" to the inmate's health and safety under a subjective standard. Wilson v. Seiter, 501 U.S. 294, 297 - 99, 111 S.Ct. 2321, 2323 - 2325, 115 L.Ed.2d 271 (1991); also see King v. Rubenstein, 825 F.3d 206, 218 (4th Cir. 2016)(quoting Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993))("[T]o make out a prima facie case that prison conditions violate the Eighth Amendment, a plaintiff must show both '(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.'"); Iko v. Shreve, 535 F.3d 225, 239 (4th Cir. 2008)(explaining that the above requirements "spring from the text of the amendment itself;

absent intentionality, a condition imposed upon an inmate cannot properly be called 'punishment,' and absent severity, a punishment cannot be called 'cruel and unusual.'") To satisfy the objective component, Plaintiff must show that the challenged condition caused or constituted an extreme deprivation. De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003). To demonstrate an "extreme deprivation," a plaintiff "must allege a serious or significant physical or emotional injury resulting from the challenged conditions or demonstrate a substantial risk of such serious harm resulting from [his] exposure to the challenged conditions." Odom v. South Caroline Dept. of Corrections, 349 F.3d 765, 770 (4th Cir. 2003); also see Wilson v. Seiter, 501 U.S. at 298, 111 S.Ct. at 2321(A sufficiently serious deprivation occurs when "a prison official's act or omission . . . result[s] in the denial of the minimal civilized measure of life's necessities."); White v. Gregory, 1 F.3d 267, 269 (4th Cir. 1991)("In *Strickler*, we held that a prisoner must suffer 'serious or significant physical or mental injury' in order to be 'subjected to cruel and unusual punishment within the meaning of the' Eighth Amendment.") To satisfy the subjective component, Plaintiff must demonstrate a "deliberate indifference" to his health and safety by defendants. In particular, Plaintiff must establish that each Defendant "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, supra, 511 U.S. at 837, 114 S.Ct. at 1979. Plaintiff in this case must therefore allege and establish that each Defendant was aware of the excessive risk to Plaintiff's health or safety and each Defendant disregarded that risk.

Plaintiff contends that the conditions of his confinement in the SHU is cruel and unusual based on the following: being served cold food; not being provided with a book to read for nine

weeks; being subjected to poor ventilation; being provided with a cell that has a rusty air vent, desk, bunk, and door; not being provided with soap for approximately three weeks; being provided with only one pair of sock for approximately two weeks; and only being provided a change of sheets and blanket every two weeks. (Document No. 12, pp. 15 - 18.) As stated above, prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." Wolfish, 573 F.2d at 125. In Wilson v. Seiter, 501 U.S. 294, 111 S.Ct. 2321, 2327, 115 L.Ed.2d 271 (1991), the Supreme Court held that "some conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise-for example, a low cell temperature at night combined with a failure to issue blankets." Liberally construing Plaintiff's Second Amended Complaint and assuming all facts as true, Plaintiff's allegations do not establish an Eighth Amendment violation. To the extent Plaintiff complains of poor ventilation and rusty air vents, bunks, cell doors, and desks, such does not constitute a constitutional violation because there is no allegation that Plaintiff suffered any specific injury nor was Plaintiff deprived of an identifiable human need. Strickler v. Waters, 989 F.2d 1375, 1379-81 (4th Cir. 1993)(complaint of overcrowding and poor ventilation did not constitute a constitutional violation because inmate did not allege any specific injury as a result of the purported conditions); Hunnewell v. Warden, 19 F.3d 7 (1st Cir. 1994)(unpublished decision)(holding that inmate's claim that "cell lights are on during the night making it difficult to sleep" and "the ventilation system blows dust and fibers into his cell causing him to have headaches and bloody noses" was insufficient to state a claim under the Eighth Amendment). To the extent Plaintiff complains he was not provided with

hygiene supplies for three weeks and a reasonable change of clothing and linens, it is well recognized that the short-term denial of clean clothing and hygiene supplies does not rise to the level of an Eighth Amendment violation. See Beverati, 120 F.3d at 504-05, n. 5(finding a six-month deprivation of clean clothing, linen, or bedding did not violate the Eighth Amendment); Johnson v. Fields, 2017 WL 5505991, * 10 (W.D.N.C. Nov. 16, 2017)("Plaintiff's claim that he was denied a shower and clean clothes for twelve days is insufficient as a matter of law to maintain an Eighth Amendment claim."); DeLoach v. South Carolina Dept. of Corr., 2009 WL 1651452, * 3 – 4 (D.S.C. June 11, 2009), aff'd., 355 Fed.Appx. 681 (4th Cir. 2009)(denial of a clean jumpsuit and hygiene packet for a thirty day period did not constitute a denial of a 'basic need'); Walker v. Dart, 2010 WL 669448, * 4 (N.D.Ill. Feb. 19, 2010)("Being denied clean clothes for two weeks, though unpleasant, is not a deprivation serious enough to support an Eighth Amendment claim)(collecting cases); Williams v. Anderson, 2006 WL 709209, * 13 (S.D.W.Va. March 16, 2006)(finding segregated inmate's inability to "exercise, keep personal hygiene items, change clothes or shower, take part in academic and religious programs or telephone family members" did not violate the Eighth Amendment). To the extent Plaintiff complains of being served cold food, such is insufficient to state a constitutional claim. Although the Eighth Amendment requires that inmates be provided with adequate food, there is no constitutional right that such food be served warm. Thaddeus-X v. Blatter, 175 F.3d 378, 404-05 (6th Cir. 1999)(finding that cold food is an ordinary incident of prison life); Laufgas v. Speziale, 263 Fed.Appx. 192, 198 (3rd Cir. 2008)("While prisoners are guaranteed a nutritionally adequate diet under the Eighth Amendment, there is no constitutional right to hot meals."); Brown-El v. Delo, 969 F.2d 644, 648 (8th Cir. 1992)(dismissing prisoner's complaint of "cold food" as

frivolous); Umar v. Burkett, 1993 WL 241481, * 2 (5th Cir. June 15, 1993)(an inmate's complaint of being served cold food does not state a constitutional claim); Harrison v. Moketa, 485 F.Supp.2d 652, * 656 (D.S.C. 2007)("merely serving food cold does not present a serious risk of harm or an immediate danger to the health of an inmate"); Couch v. Jabe, 479 F.Supp.2d 569, 587-88 (W.D.Va. 2006)(cold food does not violate the Eighth Amendment). Finally, the combined conditions of confinement complained of by Plaintiff amounts to nothing more than a "routine discomfort [that] is part of the penalty that criminal offenders pay for their offenses against society." Strickler, 989 F.2d at 1380. The Eighth Amendment "does not mandate comfortable prisons." Rhodes v. Chapman, 452 U.S. at 349, 101 S.Ct. at 2400. "To the extent . . . conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Id. at 347, 101 S.Ct. 2392; Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995)(citing Hudson v. McMillian, 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992)); Lopez v. Robinson, 914 F.2d 486, 490 (4th Cir. 1990); also see Alberti v. Klevenhagen, 790 F.2d 1220, 1228 (5th Cir. 1986)(the Eighth Amendment does not require "the provision of every amenity needed to avoid mental, physical, and emotional deterioration"). Accordingly, the undersigned recommends that Plaintiff's Eighth Amendment claim challenging his conditions of confinement in SHU be dismissed.

  **B.**  *Telephone Privileges.*

  Plaintiff contends that the restriction on his telephone privileges has resulted in cruel and unusual punishment prohibited under the Eighth Amendment of the United States Constitution. (Document No. 12, pp. 5 – 8.) Plaintiff explains that he has not be allowed to make a phone call to his family for more than ten months. (Id.) There is no constitutional or federal statutory right

to use a telephone while in prison." United States v. Alkire, 82 F.3d 411 (4th Cir. 1996)(unpublished opinion). Furthermore, prison officials may properly restrict an inmate's telephone privileges if doing so is reasonably related to a legitimate prison security or administrative interest. See Benzel v. Grammar, 869 F.2d 1105, 1108 (8th Cir. 1989); also see Woods v. Federal Bureau of Prisons, 2011 WL 886071, * 2 (W.D.Va. Mar. 14, 2011); Harrison v. Federal Bureau of Prisons, 464 F.Supp.2d 552, 555 (E.D.Va. 2006). In the instant case, Plaintiff acknowledges that the BOP restricted Plaintiff's telephone privileges based upon his history of "serious telephone abuse" while in State custody. (Document No. 12, pp. 5 - 6.) Thus, the BOP had a legitimate interest in restricting Plaintiff's telephone privileges. Further, the Court finds that an 10-month loss of telephone access based upon Plaintiff's past history of "serious telephone abuse" is not a dramatic departure from accepted conditions of confinement. See Thomas v. Drew, 365 Fed.Appx. 485, 488 (4th Cir. 2010)(no Eighth Amendment violation where inmate's telephone privileges were suspended for more than 50 years as a sanction for "misuse of telephone"); Alkebulanyahh v. Ozmint, 2009 WL 2043912, *10 (D.S.C. July 13, 2009), aff'd, 358 Fed.Appx. 431 (4th Cir. 2009)(no Eighth Amendment violation where an inmate's visitation privileges were suspended for more than two-years following eleven major disciplinary convictions). Although Plaintiff alleges that that lack of telephone privileges has caused him emotional distress, Plaintiff does not allege that he has suffered a significant injury or experienced an extreme deprivation of a basic human need. Based on the foregoing, the undersigned finds that Plaintiff's above claim should be dismissed.

    **C.**     *Deliberate Indifference to Medical and Dental Needs.*

To the extent Plaintiff is alleging that Defendants Brown, Goode, Coppillo, Moore, and

Carver were deliberately indifferent to his medical and dental needs, the undersigned finds that Plaintiff has stated a plausible claim and such should not be dismissed at this point in the proceedings. (Document No. 12, pp. 9 – 1.2)

3. **Due Process Claims:**

Liberally construing Plaintiff's Complaint, Plaintiff appears to allege that Defendants Rife, Pilaunt, Johnson, and Rich failed to follow the BOP's policies in violation of the *Accardi* Doctrine and his due process rights.[3] (Document No. 12, pp. 5 – 7.) First, Plaintiff alleges that he has been incarcerated at FCI McDowell for more than ten months and his telephone restriction has never been reviewed pursuant to Program Statement ["P.S."] 5264.08(13)(b)(4). (Id.) P.S. 5264.08(13)(b)(4) provides that "[t]elephone restrictions imposed by the Warden due to a PSF for Serious Telephone Abuse must be reviewed at least every six months, ordinarily in conjunction with the inmate's Program Review, to determine if the restriction should continue or be modified." Next, Plaintiff alleges that he is entitled to at least one telephone call per month pursuant to P.S. 5264.08(13)(b)(6). P.S. 5264.08(13)(b)(6) provides that "[i]nmates with telephone restrictions under this section are still entitled to place at least one telephone call per month, unless also under a sanction of telephone restriction the UDC or DHO imposed following formal, and completed, inmate discipline proceedings." Plaintiff alleges that even though he has no disciplinary sanction restricting his telephone access, Plaintiff has been denied at least one telephone call per month. To the extent Plaintiff is alleging that Defendants Rife, Pilaunt,

---

[3] The *Accardi* Doctrine provides that when an agency fails to follow its own procedures and regulations, that agency's actions are generally invalid. *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954); *also see Nader v. Blair*, 549 F.3d 953, 962 (4th Cir. 2008); *United States v. Morgan*, 193 F.3d 252, 266-67 (4th Cir. 1999)(Having adopted a policy or regulation, an agency is bound to apply such and its failure to do so can create a due process violation where prejudice has resulted).

Johnson, and Rich violated the *Accardi* Doctrine and his due process rights by failing to follow BOP policies, the undersigned finds that Plaintiff has stated a plausible claim and such should not be dismissed at this point in the proceedings.

Based upon the foregoing, the undersigned finds that Plaintiff has failed to state a plausible claim against the following Defendants: (1) Mr. Mehle; (2) Mr. Halsey; (3) Mr. Martin; (4) Mr. Stock; and (5) The Captain. Accordingly, the undersigned respectfully recommends that the foregoing Defendants be dismissed.

## PROPOSAL AND RECOMMENDATION

Based upon the foregoing, it is respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **DISMISS** Plaintiff's Complaint as to the following: (1) Claim of a denial of the right to participate in the BOP's administrative remedy process; (2) Claim of unconstitutional conditions of confinement in violation of the Eighth Amendment; (3) Claim of unconstitutional restriction on telephone privileges in violation of the Eighth Amendment; and **REFER** this matter back to the undersigned for further proceedings on Plaintiff's claim of (1) deliberate indifference regarding his medical and dental care, and (2) violation of the *Accardi* Doctrine and due process.[4]

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B),

---

[4] By separate Order entered this day, the undersigned has granted Plaintiff's Motion to Proceed Without Prepayment of Fees as to the following: (1) Plaintiff's deliberate indifference claim against Dr. Brown, PA Goode, PA Coppillo, Medical Administrator Moore, and Ms. Carver; and (2) Plaintiff's *Accardi* Doctrine and due process claim against Defendants Rife, Pilaunt, Johnson,

and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the Plaintiff shall have fourteen (14) days (filing of objections) and three (3) days (if received by mail) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Faber and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

Date: November 7, 2019.

_____
Omar J. Aboulhosn
United States Magistrate Judge

---

and Rich.