IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BLUEFIELD DIVISION

JEREMY J. HUNT,                           )
                                          )
          Plaintiff,                      )
v.                                        )        Civil Action No. 1:19-00356
                                          )
MS. M. CARVER, *et al.*,                  )
                                          )
          Defendants.                     )

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court are the following: (1) Plaintiff's letter-form Motion for Default Judgment (Document No. 63), filed on June 26, 2020; and (2) Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 66), filed on June 29, 2020. The Court notified Plaintiff pursuant to Roseboro v. Garrison, 528 F.2d 304 (4th Cir. 1975), that Plaintiff had the right to file a response to Defendants' Motion and submit Affidavit(s) or statements and/or other legal or factual material supporting his claims as they are challenged by the Defendants in moving to dismiss. (Document No. 70.) On September 2, 2020, Plaintiff filed his Response in Opposition. (Document No. 74.) Having examined the record and considered the applicable law, the undersigned has concluded that the Plaintiff's letter-form Motion for Default (Document No. 63) should be denied and Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 66) should be granted in part and denied in part.

## PROCEDURAL HISTORY

On June 5, 2019, and September 16, 2019, Plaintiff filed his Applications to Proceed Without Prepayment of Fess or Costs. (Document Nos. 5 and 16.) On July 19, 2019, Plaintiff filed his Second Amended Complaint for alleged violations of his constitutional and civil rights

pursuant to <u>Bivens v. Six Unknown Federal Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388, 91 S.Ct. 1999, 24 L.Ed.2d 619 (1971).[1] (Document No. 12.) In his Second Amended Complaint, Plaintiff names the following as Defendants: (1) Ms. M. Carver, Acting Warden of FCI McDowell; (2) Mr. Rich, Assistant Warden of FCI McDowell; (3) Mr. Mehle, Lieutenant at FCI McDowell; (4) Mr. Halsey, Lieutenant at FCI McDowell; (5) Mr. Martin, Lieutenant at FCI McDowell; (6) Mrs. Rife, Case Manager Coordinator at FCI McDowell; (7) Mr. Pilaunt, B-Unit Manager at FCI McDowell; (8) Mr. Johnson, B-Unit Manager at FCI McDowell; (9) Mr. Stock, B-Unit Counselor at FCI McDowell; (10) Medical Administrator Moore, FCI McDowell; (11) Ms. Copolo, Physician Assistant at FCI McDowell; (12) Mr. William Goode, Physician Assistant at FCI McDowell; (13) Veronica Brown, Dentist at FCI McDowell; and (14) The Captain at FCI McDowell. (<u>Id.</u>, pp. 1 – 2.) Plaintiff alleges that Defendants violated his constitutional rights based upon the following: (1) Denying Plaintiff telephone privileges; (2) Denying Plaintiff adequate dental care and medical care for "skin sores on his hand and knees;" (3) Denying Plaintiff access to the administrative remedy process; and (4) Subjecting Plaintiff to cruel and unusual conditions of confinement in the Special Housing Unit ["SHU"]. (<u>Id.</u>, p. 4.)

Concerning Plaintiff's claim of the denial of telephone privileges, Plaintiff stated that he had not be allowed to make one phone call since he was placed in FCI McDowell on August 22, 2018. (<u>Id.</u>, pp. 5 - 6.) Plaintiff explained that he has no disciplinary reasons for the denial of telephone privileges and he is entitled to at least one phone call per month under BOP policy. (<u>Id.</u>) Plaintiff stated that Unit Manager Rife explained that Plaintiff's telephone access was denied

---

[1] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

because Plaintiff has a Public Safety Factor for Serious Telephone Abuse that was applied to Plaintiff when he entered the BOP. (Id.) Plaintiff complained that even though Unit Manager Rife told Plaintiff she would submit a request to the Warden for Plaintiff to be allowed telephone access, Plaintiff contends that Unit Manager Rife never submitted the "paperwork" and his Public Safety Factor has never been reviewed pursuant to BOP policy. (Id.) Plaintiff further argued the underlying conduct for telephone abuse occurred in 2013 when he was in State custody, and such should not be used against Plaintiff while he is in BOP custody. (Id.) Plaintiff complained that he was not allowed to call his grandmother, who died on June 16, 2019. (Id., p. 7.) Plaintiff stated that his grandmother was his "primary caregiver as a juvenile" and her death has caused him "lots of pain, stress, and depression." (Id.) Plaintiff further complained that he has not been allowed to call his 11-year old daughter for the last ten months, which has caused "a lot of stress on my daughter, my wife, and me." (Id.) Plaintiff stated that Mr. Pilaunt became Plaintiff's Unit Manager in March 2019, and Unit Manager Pilaunt has also denied Plaintiff telephone access and failed to submit "paperwork" to the Warden to review Plaintiff's telephone restriction. (Id., pp. 7 – 8.) Plaintiff stated that he submitted an administrative remedy request concerning review of his telephone restriction to Case Manager Johnson on April 25, 2019, but Plaintiff was never provided with a response. (Id., p. 8.) Finally, Plaintiff alleged that he notified Assistant Warden Rich of his telephone restriction and request for review, but no action was taken by Assistant Warden Rich. (Id.) Plaintiff, therefore, concluded that Mrs. Rife, Mr. Pilaunt, Mr. Johnson, and Mr. Rich violated his constitutional rights by denying Plaintiff telephone access. (Id.)

Concerning his inadequate medical care claim, Plaintiff first alleged that he did not receive adequate medication following the removal of his wisdom teeth on January 10, 2019. (Id., p. 9.)

3

Plaintiff alleged that the oral surgeon prescribed Motrin and Augmentin, but Dr. Brown only provided Plaintiff with Ibuprofen – not Augmentin. (Id.) Plaintiff alleged that on January 16, 2019, he suffered from a swollen mouth and neck, pain in his neck and cheek area, swollen lymph nodes, difficulty swallowing, and a "pounding headache." (Id.) Plaintiff stated that he reported the above symptoms to Correctional Officers in SHU, and Lt. Martin informed Plaintiff that "no medical staff were present" but he would email medical to come to see Plaintiff first thing in the morning. (Id.) Plaintiff complained that medical never came to see him. (Id.) Plaintiff stated that he did not receive the Ibuprofen until January 26, 2019, at 1:45 p.m. from RN Walters. (Id.) Plaintiff alleged that despite submitting numerous sick call requests for multiple problems, including his "skin sores," medical did not come to see him until May 2, 2019. (Id., pp. 10 - 11.) Plaintiff acknowledged that medical staff diagnosed him with dry skin on May 2, 2019, and instructed Plaintiff to buy Dove soap from the commissary. (Id.) Plaintiff, however, complained that he was only allowed to purchase the Dove soap on one occasion, and SHU staff are now prohibiting all "white soap bars in SHU." (Id.) Plaintiff further complained that medical has not prescribed any other treatment for his skin problems and his rash is "spreading and is getting worse." (Id.) Plaintiff alleged that although RN Walters put Plaintiff on the list to be evaluated by PA Goode, PA Goode failed to properly follow up with Plaintiff. (Id., p. 12.) Plaintiff alleged that PA Goode stopped working at FCI McDowell around March 20, 2019, and "I believe since he was leaving McDowell that he was careless in his duties for failing to ensure I received medical care because he was no longer going to be at McDowell, and he violated my right to receive medical care by not coming to see me when he was emailed by Lt. Martin and AW Carver and not responding to my sick call requests." (Id.) Plaintiff alleged that he was next assigned to PA Copolo, who treated Plaintiff from

4

around March 20, 2019, until June 2019. (Id.) Plaintiff alleged that PA Copolo failed to ensure that Plaintiff received medical care by not responding to his sick call requests and failing to review his medical records to ensure correct treatment for his skin issues. (Id.) Plaintiff alleged that PA Copolo did not do anything to treat his skin condition for "4 months straight and she quit working at McDowell also." (Id.) Finally, Plaintiff alleged that Medical Administrator Moore and AW Carver failed to ensure that Plaintiff received medical care. (Id.)

Third, Plaintiff alleged that his constitutional rights have been violated because he had been denied access to the administrative remedy process. (Id., p. 13.) Plaintiff alleged that he first attempted to start the administrative remedy process in December 2018, but he never received a response or proper papers to proceed to the next level. (Id.) Plaintiff stated that from January 2019 until May 2019, he attempted to get the proper forms to file an administrative remedy, but such forms were not provided until May 13, 2019. (Id.) Plaintiff claimed that he notified the Assistant Warden on March 6, 2019, that Plaintiff was being denied access to the administrative remedy process. (Id.) Plaintiff complained that after receiving the administrative remedy form on May 13, 2019, Plaintiff submitted his administrative remedy request on May 22, 2019 concerning the denial of his telephone privileges. (Id.) Plaintiff, however, stated that as of July 15, 2019, he had not received "a response or proper papers to proceed to the next level." (Id.) Therefore, Plaintiff concluded that Mrs. Rife, Mr. Pilaunt, Mr. Johnson, Mr. Stock, and Mr. Rich have all violated his constitutional right by not ensuring Plaintiff had access to the administrative remedy process. (Id., p. 14.) Plaintiff further concluded that the Captain, Lt. Mehle, and Lt. Martin denied him access to a black ink pen further preventing Plaintiff from completing his administrative remedy forms. (Id.)

Finally, Plaintiff alleged that the living conditions in the SHU constitute cruel and unusual

punishment in violation of the Eighth Amendment. (Id., pp. 15 – 16.) Plaintiff first complained that his food is served cold "just about every day." (Id., p. 15.) Plaintiff stated that the "hamburgers are so cold that there is grease solidified around the hamburger." (Id.) Plaintiff alleged that he has complained to the Captain, Mr. Rich, Lt. Mehle, Lt. Halsey, and several COs concerning being served cold food. (Id.) Second, Plaintiff alleged that he was unable to get a book to read for nine months. (Id., p. 16.) Plaintiff stated that he requested a book from Ms. Carver, Mr. Rich, the Captain, and Lt. Mehle, but was not provided one for nine weeks. (Id.) Third, Plaintiff complained that he has been denied dental floss for "6 months straight." (Id.) Plaintiff alleged that his dentist instructed him to floss daily and "not being able to floss will cause dental decay." (Id.) Plaintiff alleged that he notified Mr. Pilaunt, the Captain, Lt. Halsey, and Lt. Mehle of his need for dental floss, but such was never provided to Plaintiff. (Id.) Fourth, Plaintiff claimed that the "ventilation in the SHU is horrible" because the air vents are "clogged from inmates using toothpaste and toilet paper to block the air from coming out." (Id.) Plaintiff further complained that the air vents, desk, doors, and bunks are rusty. (Id.) Finally, Plaintiff complained that he was provided with inadequate supplies, such as the following: (1) No soap from February 25th until March 18th; (2) Only one clean towel from February 12th until February 26th; (3) Only one clean pair of socks from March 3rd until March 20th; and (4) Only 1 sheet and blanket every two seeks from April 27th until July 14th. (Id.) Plaintiff alleged that Lt. Halsey, Lt. Mehle, and Lt. Martin are responsible for the above conditions. (Id., p. 17.) Plaintiff requests monetary and injunctive relief. (Id., p. 18.)

By Proposed Findings and Recommendation entered on November 7, 2019, the undersigned recommended that the District Court deny Plaintiff's Second Amended Complaint as to the following: (1) Claim of a denial of the right to participate in the BOP's administrative

remedy process; (2) Claim of unconstitutional conditions of confinement in violation of the Eighth Amendment; and (3) Claim of unconstitutional restrictions on telephone privileges in violation of the Eighth Amendment. (Document No. 17.) Additionally, the undersigned recommended that the District Court refer this matter back to the undersigned for further proceedings on Plaintiff's claim of (1) deliberate indifference regarding his medical and dental care, and (2) violation of the *Accardi* Doctrine and due process. (Id.) Also on November 7, 2019, the undersigned entered an Order granting Motion to Proceed Without Prepayment of Fees as to the following: (1) Plaintiff's deliberate indifference claim against Dr. Brown, PA Goode, PA Copolo, Medical Administrator Moore, and Ms. Carver; and (2) Plaintiff's *Accardi* Doctrine and due process claim against Defendants Rife, Pilaunt, Johnson, and Rich. (Document No. 18.) On the same day, the Clerk's Office issued the summonses for Defendants Brown, Goode, Copolo, Moore, Carver, Rife, Pilaunt, Johnson, and Rich. (Document No. 19.) By Memorandum Opinion and Order entered on January 6, 2020, United States District Judge David A. Faber adopted the undersigned's recommendation. (Document Nos. 41 and 42.) By Memorandum Opinion and Order entered on March 20, 2020, District Judge Faber clarified that Mr. Mehle, Mr. Halsey, Mr. Martin, Mr. Stock, and The Captain were dismissed as defendants. (Document Nos. 61 and 63.)

On June 26, 2020, Plaintiff filed his letter-form Motion for Default Judgment stating that Defendants had not file a timely response to his Second Amended Complaint. (Document No. 63.) On June 29, 2020, Defendants filed a "Motion to File Response Out of Time Pursuant to Rule 6" (Document No. 64), "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 66), and Memorandum in Support (Document No. 67). By Order entered on June 30, 2020, the undersigned granted Defendants' "Motion to File Response Out of Time Pursuant to

Rule 6." (Document No. 68.) In Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" and Memorandum in Support, Defendants argue that Plaintiff's claim should be dismissed based on the following: (1) Defendant Goode has not been served (Document No. 67, p. 7.); (2) "Defendant Moore is a U.S. Public Health Service Employee entitled to immunity (Id., p. 7 – 8.); (3) Plaintiff failed to fully exhaust his administrative remedies as to all claims (Id., pp. 8 – 11.); (4) "Plaintiff's allegations are not cognizable under Bivens" (Id., pp. 11 – 19.); (5) "The *Accardi* Doctrine does not apply in inmates' Bivens actions against BOP employees" (Id., pp. 19 – 22.); (6) There is a "lack of personal involvement of Defendants Carver, Rich, and Moore" (Id., pp. 22 – 23.); (7) Plaintiff received adequate medical and dental care (Id., pp. 23 – 31.); and (8) Defendants are entitled to qualified immunity (Id., pp. 31 – 33.)

As Exhibits, Defendants attach the following: (1) The Declaration of Destiny Spearen (Document No. 66-1, pp. 2 – 7.); (2) A copy of Plaintiff's Inmate History (Id., p. 9.); (3) A copy of Plaintiff's "Security/Designation Data" (Id., p. 11.); (4) A copy of Program Statement 5264.08, Inmate Telephone Regulation (Id., pp. 13 – 29.); (5) A copy of Plaintiff's Inmate Disciplinary History (Id., pp. 31 – 32.); (6) A copy of Requests for Inmate Telephone Restriction dated July 29, 2019 and December 20, 2019 (Id., pp. 34 – 35.); (7) A copy of Inmate Call Records (Id., pp. 37 – 38.); (8) A copy of Plaintiff's "Administrative Remedy Generalized Retrieval" (Id., pp. 40 – 42.); (9) The Declaration of Veronica Brown (Id., pp. 44 – 46.); (10) A copy of Plaintiff's relevant medical records (Document No. 73.); (10) A copy of Plaintiff's Inmate Cell Assignment History (Document No. 66-1, pp. 48 – 49.); (11) A copy of Plaintiff's Commissary Receipts (Id., pp. 51 - 81; and (12) A copy of the Special Housing Unit Commissary Order Form and Price List (Id., pp. 83 – 85.).

8

Notice pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on June 30, 2020, advising him of the right to file a response to Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgement." (Document No. 70.) On September 2, 2020, following the granting of an extension of time, Plaintiff filed his Response in Opposition to Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment." (Document No. 74.)

## THE STANDARD

### Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009)(<u>quoting</u> <u>Bell Atlantic Corporation v. Twombly</u>, 550 U.S. 554, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> Although factual allegations must be accepted as true for purposes of a motion to dismiss, this principle does not apply to legal conclusions. <u>Id.</u> "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u> The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." <u>Twombly</u>, 550 U.S. at 555, 127 S.Ct. at 1959. Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. <u>Denton v. Hernandez</u>, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992); <u>also see</u> <u>Goode v. Central Va. Legal Aide Society, Inc.</u>, 807 F.3d 619 (4th Cir. 2015).

**Summary Judgment**

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 - 87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356. Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim. Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no facts or inferences which can be drawn from the circumstances will support Plaintiff's claims, summary judgment is appropriate.

## DISCUSSION

1. **Motion for Default Judgment**:

In his letter-form Motion, Plaintiff states that Defendants have not filed a timely response to his Second Amended Complaint. (Document No. 63.) Plaintiff, therefore, states that he "assumes that the defendants have no dispute over my claim." (Id.) Accordingly, Plaintiff requests that the Court grant him compensatory and punitive damages. (Id.)

In Response, Defendants, by AUSA Lindsay, filed Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" and "Motion to File Response Out of Time Pursuant to Rule 6." (Document Nos. 64 and 66.) In support of the "Motion to File Response Out of Time," AUSA Lindsay noted that on January 6, 2020, Defendants filed a "Motion to Extend Time to File Answer and for a Consolidated Response Date." (Document No. 64.) AUSA Lindsay explained that the foregoing Motion was based upon the fact that at least one defendant had not been served, and there was a disparity between service dates which would result in multiple responses spread across multiple dates. (Id.) By Order entered on January 7, 2020, the Court granted Defendants' Motion and directed that Defendants file their Response within sixty (60) days of service of the last defendant. (Id.) AUSA Lindsay acknowledged that the last defendant (Ms. Stark Copolo) was served on March 19, 2020. (Id.) AUSA Lindsay, however, noted that the Court entered its first General Order on March 13, 2020 continuing all civil and criminal jury trials in the Southern District of West Virginia because of the COVID-19 pandemic. (Id.) AUSA Lindsay next explained that all employees of the United States Attorney's Office were required to telework beginning on March 23, 2020. (Id.) Due to the pandemic, AUSA Lindsay explained that "multiple cases were continued, discovery prolonged, and pertinent dates and deadlines were changed." (Id.) AUSA Lindsay further acknowledged that the "transition to teleworking was not without its difficulties" and "managing caseloads and deadlines was difficult" despite best efforts. (Id.) Thus, AUSA Lindsay acknowledged that "[i]n the midst of this transition period, the response deadline established by service on Ms. Stark inadvertently failed to be recorded." (Id.) AUSA Lindsay, however, contended that that foregoing constitutes excusable neglect under Rule 6(b). (Id.) AUSA Lindsay further noted that although Plaintiff has filed a letter-form Motion for Default

Judgment based on Defendants' lack of a timely response, Plaintiff has failed to demonstrate or allege any prejudice caused by Defendants' delayed response. (Id.) By Order entered on June 30, 2020, the undersigned determined that the foregoing circumstances constituted excusable neglect on the part of Defendants and granted Defendants' "Motion to File Response Out of Time Pursuant to Rule 6." (Document No. 68.)

Rule 55(a) of the Federal Rules of Civil Procedure permits the entry of default judgment "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend . . .." After reviewing all of the pleadings and filings in this case, the undersigned finds that Defendants have not defaulted by failing to respond to Plaintiff's Second Amended Complaint. As explained above, the undersigned granted Defendants' "Motion to File Response Out of Time Pursuant to Rule 6." (Document No. 68.) Thus, Defendants have properly responded to Plaintiff's Second Amended Complaint. Accordingly, Plaintiff's letter-form Motion for Default (Document No. 63) should be denied.

**2.    Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment:**

**A.    Defendant Goode:**

The undersigned finds that the Defendant Goode should be dismissed due to the lack of service. Although officers of the Court are charged with *assisting* the Plaintiff with service of process under 28 U.S.C. § 1915(d) due to his *in forma pauperis* status, neither the Court nor the USMS, are required to be *advocates* for the *pro se* Plaintiff. The Court has no responsibility to continue to search for the location of any unserved Defendant for the purpose of perfecting service of process for the Plaintiff. In Skaggs v. Clark, 2015 WL 269154 (S.D.W.Va. Jan. 21, 2015), United States District Judge Robert C. Chambers stated as follows:

12

> Notwithstanding the difficulties faced by an incarcerated plaintiff, it is not yet, and cannot become, the role of the courts to track down defendants on behalf of incarcerated plaintiffs. At a minimum, such plaintiffs bear the reasonable burden of identifying some address where service can be properly made. Only upon provision of such information – which is absent here – can the courts execute services.

Skaggs v. Clark, 2015 WL 269154, * 3 (S.D.W.Va. Jan. 21, 2015); also see Ray v. Pursell, 2017 WL 3707584 (S.D.W.Va. June 23, 2017)(same). The Court diligently attempted to effect service upon Defendant Goode based upon the information provided by Plaintiff. (Document No. 27.) The information provided by Plaintiff, however, was inadequate to effective service. (Document No. 33.) The Court notified Plaintiff that a "Suggestion of Death" had been filed in at least one other civil action revealing that William Goode died on March 27, 2019. (Document No. 34.) Therefore, the undersigned directed Plaintiff to provide the Court with identifying information, including an address for service of process, for an authorized representative for William Goode by January 6, 2020. (Id.) Plaintiff has failed to provide the Court with any further identifying information concerning Defendant Goode. If a defendant or his authorize representative is not served, Plaintiff will not be able to prevail on his claim against that person. It is Plaintiff's responsibility, and not the duty of the Court, to ascertain the identities and addresses of those individuals whom Plaintiff believes caused him injury. Accordingly, the undersigned respectfully recommends that Plaintiff's claims against Defendant Goode be dismissed without prejudice due to the lack of service.

### B.     Defendant Moore:

In Defendants' Motion, Defendant Moore argues that she is a United States Public Health Service Employees and is entitled to absolute immunity. (Document No. 66 and Document No. 67, pp. 7 - 8.) In support, Defendants attach the Declaration of Destiny Spearen, a Paralegal employed by the BOP's Beckley, West Virginia Consolidate Legal Center. (Document No. 66-1,

pp. 2 – 7.) Ms. Spearen states as follows: "BOP records further indicate K. Moore is a Commissioned Officer in the United States Public Health Service ("PHS") and was at the time of the events alleged in Plaintiff's Complaint." (Id., p. 3.) In his Response in Opposition, Plaintiff fails to specifically address the above argument. (Document No. 74.)

> Title 42 U.S.C. § 233(a) provides as follows:
>
> The remedy against the United States provided by sections 1346(b) and 2672 of Title 28 . . . for damages for personal injury, including death, resulting from the performance of medical, surgical, dental or related functions, including the conduct of clinical studies or investigation, by any commissioned officer or employee of the Public Health Service while acting within the scope of his office or employment, shall be exclusive of any other civil action or proceeding by reason of the same subject-matter against the officer or employee . . . whose act or omission gave rise to the claim.

Thus, Congress made proceedings under the Federal Tort Claims Act the sole avenue to seek relief against a Public Health Service employee for injuries resulting from the employee's performance of medical functions within the scope of his or her employment. The United States Supreme Court has held that "[t]he immunity provided by § 233(a) precludes *Bivens* actions against individual [Public Health Service] officers or employees for harms arising out of constitutional violations committed while acting within the scope of their office or employment." Hui v. Castaneda, 559 U.S. 799, 130 S.Ct. 1845, 1847, 176 L.Ed.2d 703 (2010)(stating that Section 233(a) "plainly precludes a *Bivens* action against petitioners by limiting recovery for harms arising from the conduct at issue to an FTCA action against the United States.") Defendant Moore holds the position of the Health Services Administrator ["HSA"] at FCI McDowell. Thus, Plaintiff appears to allege that Defendant Moore is responsible for failing to ensure that he was provided appropriate medical care. Defendant Moore was clearly acting within the scope of her employment when performing functions pertinent to her position, such as her administrative oversight and supervision

of the Health Services Department. Based on the foregoing, the Court finds that Defendant Moore was a Commissioned Officer in the United States Public Health Service during the time period relevant to this Complaint and has absolute immunity from suit for all claims arising from the medical care provided to Plaintiff. The Court, therefore, respectfully recommends that Defendant Moore's "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" be granted. The undersigned finds it unnecessary to consider the other reasons which Defendant Moore has submitted for dismissal of Plaintiff's claims.

**C.    Failure to Exhaust:**

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a)(1996), requires that inmates exhaust available administrative remedies prior to filing civil actions though the administrative process may not afford them the relief they might obtain through civil proceedings.[2] Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2382-83, 165 L.Ed.2d 368 (2006); Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)(The Prison Litigation Reform Act's exhaustion requirement applies to all inmate suits about prison life whether they involve general circumstances or particular episodes and whether they allege excessive force or some other wrong.); Booth v. Churner, 532 U.S. 731, 121 S.Ct. 1819, 1820,149 L.Ed.2d 958 (2001)("Under 42 U.S.C. § 1997e(a), an inmate seeking only money damages must complete any prison administrative process capable of addressing the inmate's complaint and providing some form of relief, even if the process does not make specific provision for monetary relief."). Exhaustion of

---

[2] 42 U.S.C. § 1997e(a) provides as follows:

> No action shall be brought with respect to prison conditions under section 1983 of this title or any other federal law, by a prisoner confined in any jail, prison, or other correction facility until such administrative remedies as are available are exhausted.

administrative remedies is also required when injunctive relief is requested. Goist v. U.S. Bureau of Prisons, 2002 WL 32079467, *4, fn.1 (D.S.C. Sep 25, 2002), aff'd, 54 Fed.Appx. 159 (4th Cir. 2003), cert. denied, 538 U.S. 1047, 123 S.Ct. 2111, 155 L.Ed.2d 1088 (2003). "[A] court may not excuse a failure to exhaust" because the PLRA's mandatory exhaustion scheme "foreclose[es] judicial discretion." Ross v. Blake, ___ U.S. ___, 136 S.Ct. 1850, 1856-57, 195 L.Ed.2d 117 (2016)("[A] court may not excuse a failure to exhaust, even to take [special circumstances] into account."). But the plain language of the statute requires that only "available" administrative remedies be exhausted. Id. at 1855("A prisoner need not exhaust remedies if they are not 'available.'") In Ross v. Blake, the Supreme Court set forth three scenarios where the administrative process is considered "unavailable": (1) The administrative process "operates as a simple dead end -- with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) The administrative process is so opaque that no ordinary prisoner can discern or navigate through the process; and (3) The "administrator thwart inmates from taking advantage of a grievance process through machination, misrepresentation or intimidation." Ross, 136 S.Ct. at 1859-60; also see Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003)(inmate lacked available administrative remedies for exhaustion purposes where inmate was unable to file a grievance because prison officials refused to provide him with the necessary grievance forms; Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001)(allegations that prison officials failed to respond to his written requests for grievance forms were sufficient to raise an inference that inmate had exhausted his available administrative remedies.)

　　　If an inmate exhausts administrative remedies with respect to some, but not all, of the claims he raises in a Section 1983, Bivens or FTCA action, the Court must dismiss the unexhausted claims and proceed with the exhausted ones. See Jones v. Bock, 549 U.S. 199, 127 S.Ct. 910, 913,

166 L.Ed.2d 798 (2007)("The PLRA does not require dismissal of the entire complaint when a prisoner has failed to exhaust some, but not all, of the claims included in the complaint. * * * If a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad.") It appears to be the majority view as well that exhausting administrative remedies after a Complaint is filed will not save a case from dismissal. See Neal v. Goord, 267 F.3d 116, 121-22 (2d Cir. 2001)(*overruled on other grounds*), a Section 1983 action, citing numerous cases. The rationale is pragmatic. As the Court stated in Neal, allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court. Moreover, if during the pendency of a suit, the administrative process were to produce results benefitting plaintiff, the federal court would have wasted its resources adjudicating claims that could have been resolved within the prison grievance system at the outset. Neal, 267 F.3d at 123. In Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999), the Court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court.. . .The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." Thus, the PLRA requires that available administrative remedies must be exhausted before the filing of a suit in Federal Court. It is further clear that the PLRA does not require that an inmate allege or demonstrate that he has exhausted his administrative remedies. See Jones v. Bock, supra; Anderson v. XYZ Correctional Health Services, 407 F.3d 674, 677 (4th Cir. 2005), *abrogated on other grounds by* Custis v. Davis, 851 F.3d 358 (4th Cir. 2017). Failure to exhaust administrative remedies is an affirmative defense. Prison officials have the burden of proving that the inmate had available remedies which he did not exhaust. Jones v. Bock, supra, 549 U.S. at 216, 127 S.Ct. at 921(Failure to exhaust is an affirmative defense that a defendant must generally plead and prove);

also see Dale v. Lappin, 376 F.3d 652, 655 (7th Cir. 2004)("Although exhaustion of administrative remedies is a precondition to a federal prisoner filing a Bivens suit, [citations omitted] failure to exhaust is an affirmative defense that the defendants have the burden of pleading and proving." (Citations omitted)) The Court is not precluded, however, from considering at the outset whether an inmate has exhausted administrative remedies. "A court may sua sponte dismiss a complaint when the alleged facts in the complaint, taken as true, prove that the inmate failed to exhaust his administrative remedies." Custis v. Davis, 851 F.3d. 358, 361 (4th Cir. 2017); also see Banks v. Marquez, 694 Fed. Appx. 159 (4th Cir. 2017)(finding no error in the district court's decision to sua sponte dismiss petitioner's petition where petitioner explicitly admitted in his petition that he failed to exhaust his administrative remedies).

For Bivens purposes, proper exhaustion of available administrative remedies requires that "a prisoner must submit inmate complaints and appeals in the place, and at the time, the prison's administrative rules require." Dale v. Lappin, 376 F.3d at 655 (internal citations omitted); also see Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2382, 165 L.Ed.2d 368 (2006)(stating that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings"). The Federal Bureau of Prisons [BOP] has established an Administrative Remedy Program, 28 C.F.R. § 542.10, et seq., through which an inmate may seek formal review of issues or complaints relating to confinement. Depending upon at what level an inmate initiates it, the BOP's Administrative Remedy Program is a three-step or four-step grievance procedure. As a general matter, a federal inmate is required first to attempt to resolve her complaints informally by the submission of an "Inmate Request to Staff Member" form. 28 C.F.R. § 542.13. The inmate's request may be rejected if improper, and the inmate will then be

advised of the proper administrative procedure. Id. Within 20 days after the circumstances occurred which are the subject of the inmate's complaints, the inmate must complete this first step and submit a formal "Administrative Remedy Request" on a BP-9 form to an institution staff member designated to receive such Requests, 28 C.F.R. § 542.14(a) and (c)(4), or under exceptional circumstances to the appropriate Regional Director. Id., § 542.14(d). The Warden of the institution and the Regional Director must respond to the inmate's Request within 20 and 30 days respectively. Id., § 542.18. If the inmate's Request was directed to the Warden of the institution and the Warden's response is unfavorable, the inmate may appeal within 20 days to the Regional Director on a BP-10. Id., § 542.15(a) and (b). If the Regional Director's response is unfavorable, the inmate may appeal to General Counsel on a BP-11 form within 30 days after the Regional Director signed the response. Id., § 542.15(a). General Counsel has 40 days to respond to the inmate's appeal. Id., § 542.18. The administrative process is exhausted when General Counsel issues a ruling on the inmate's final appeal. Id., § 542.15(a). The entire process takes about 120 days to complete. An inmate's submission may be rejected at any level for failure to comply with the administrative remedy requirements or if the submission is written in an obscene or abusive manner. Id., § 542.17(a). The inmate will be provided with notice of any defect and whether the defect is correctable. Id., § 542.17(b). If a request or appeal is rejected and the inmate is not given an opportunity to correct the defect and resubmit, the inmate may appeal the rejection to the next appeal level. Id., § 542.17(c).

In their Motion, Defendants first argue that inmates in the SHU have access to the administrative remedy process. (Document No. 66 and Document No. 67, p. 10.) Defendants explain that "Unit Team members regularly conduct rounds in SHU to address the needs of inmates on their caseload who are housed in SHU." (Id.) Defendants state that "[i]f an inmate requests an

administrative remedy form from their Unit Team during the SHU rounds, the Unit Team member provides them with the appropriate form and will return to collect the form when the inmate has completed it." (Id.) Defendants contend that during Plaintiff's incarceration, Plaintiff has filed several administrative remedies on various topics. (Id.) Defendants, however, state that Plaintiff has not filed any administrative remedies since his transfer to FCI McDowell on August 22, 2018. (Id., p. 11.) Therefore, Defendants argue that "Plaintiff has failed to exhaust his administrative remedies as to all claims." (Id.)

In Response, Plaintiff argues that his attempts to exhaust his administrative remedies were "blocked" by prison staff at FCI McDowell. (Document No. 74, p. 3.) Plaintiff explains that months before he initiated the above action, he "notified the Assistant Warden Rich that he was not being allowed [to use] the administrative remedy process." (Id.) Plaintiff further states that he "tried to get the address to the Regional Director's Office to proceed to the next level to exhaust his administrative remedies and was given the incorrect address." (Id.) Plaintiff claims that "[b]y the Defendants giving Plaintiff the wrong address they blocked him from exhausting his administrative remedies." (Id.)

Viewing the evidence in a light most favorable to Plaintiff, the undersigned cannot find that Plaintiff failed to exhaust all available administrative remedies. In his Second Amended Complaint, Plaintiff alleges that prison staff at FCI McDowell rendered the administrative remedy process unavailable by failing to provide him with appropriate forms. (Document No. 12, pp. 13 – 14.) Plaintiff further indicates that forms were required to be completed in ink and prison staff refused to provide him with an ink pen. (Id.) In his Response, Plaintiff explains that prison staff provided him with the incorrect address when he attempted to proceed to the Regional Level. (Id.) Although Defendants acknowledge that Plaintiff successfully filed administrative remedies while

20

he was incarcerated at other institutions, Defendants state that Plaintiff failed to file any administrative remedies during his incarceration at FCI McDowell. (Document No. 67, pp. 10 - 11.) Based upon the foregoing, the undersigned cannot conclude that Plaintiff failed to exhaust his *available* administrative remedies. Accordingly, the undersigned respectfully recommends that Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" be denied based upon his failure to exhaust. The undersigned, therefore, will consider the merits of Plaintiff's claims.

### D.    Claims against Defendants Rife, Pilaunt, Johnson, and Rich:

In his Second Amended Complaint, Plaintiff alleges that Defendants Rife, Pilaunt, Johnson, and Rich violated the *Accardi* Doctrine and his rights under due process by failing to comply with BOP policies and regulations. (Document No. 12, pp. 5 – 7.) First, Plaintiff alleges that he has been incarcerated at FCI McDowell for more than ten months and his telephone restriction has never been reviewed pursuant to Program Statement ["P.S."] 5264.08(13)(b)(4). (Id.) P.S. 5264.08(13)(b)(4) provides that "[t]elephone restrictions imposed by the Warden due to a PSF for Serious Telephone Abuse must be reviewed at least every six months, ordinarily in conjunction with the inmate's Program Review, to determine if the restriction should continue or be modified." (Id.) Next, Plaintiff alleges that he is entitled to at least one telephone call per month pursuant to P.S. 5264.08(13)(b)(6). P.S. 5264.08(13)(b)(6) provides that "[i]nmates with telephone restrictions under this section are still entitled to place at least one telephone call per month, unless also under a sanction of telephone restriction the UDC or DHO imposed following formal, and completed, inmate discipline proceedings." (Id.) Plaintiff alleges that even though he has no disciplinary sanction restricting his telephone access, Plaintiff has been denied at least one telephone call per month. (Id.)

21

### (i)    *No due process violation:*

To determine whether an inmate retains a certain liberty interest, the Court must look to the nature of the claimed interest and determine whether the Due Process Clause applies. See Board of Regents v. Roth, 408 U.S. 564, 570-71, 92 S.Ct. 2701, 2705-06, 33 L.Ed.2d 548 (1972). An inmate holds a protectable right in those interests to which he has a legitimate claim of entitlement. Greenholtz v. Inmates of Nebraska Penal and Corr. Complex, 442 U.S. 1, 7, 99 S.Ct. 2100, 2103, 60 L.Ed.2d 668 (1979)(quoting Roth, 408 U.S. at 577, 92 S.Ct. 2709). In Gaston, the Fourth Circuit determined that an inmate possesses a claim of entitlement in those interests "which were not taken away expressly or by implication, in the original sentence to confinement." Id. at 343. The Supreme Court held in Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), that in order to show the deprivation of a liberty interest protected by the Due Process Clause, an inmate must show either that: (1) the conditions exceed the sentence imposed in such an unexpected manner as to give rise to protection by the Due Process Clause or (2) the confinement creates an atypical or significant hardship in relation to the ordinary incidents of prison life. Id., 515 U.S. at 484, 115 S.Ct. at 2300 (citations omitted). Absent allegations indicating that there has been a restraint upon the inmate's freedom which imposes "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," the inmate's claims have no merit. Id.

Plaintiff alleges that prison staff have improperly determined his Public Safety Factor ("PSF"), which has resulted in his loss of telephone privileges. (Document No. 12, pp. 6 - 7.) Plaintiff further complains that his PSF has not been reviewed pursuant to BOP policy (Program Statement 5264.08, Section 13) since his placement at FCI McDowell. (Id.) Liberally construing Plaintiff's Complaint and assuming all facts as true, Plaintiff's allegations do not establish a Due

22

Process violation. Failure of prison officials to follow their own internal policies, procedures or regulations alone is insufficient to make out a due process violation. See Myers v. Klevenhager, 97 F.3d 91, 94 (5th Cir 1996); Giovanni v. Lynn, 48 F.3d 908, 913 (5th Cir. 1995), cert. denied, 516 U.S. 860, 116 S.Ct. 167, 133 L.Ed.2d 109 (1995). The undersigned notes additionally that the Supreme Court has indicated that prison regulations are not designed to confer rights or benefits to inmates. Rather, they are primarily designed to guide correctional officials in the administration of prisons. Sandin v. Conner, 515 U.S. 472, 481- 482, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). It is well recognized that prisoners have no constitutional or inherent right to receive a particular security or custody classification. See Moody v. Daggett, 429 U.S. 78, 88, n. 9, 97 S.Ct. 274, 279, n. 9, 50 L.Ed.2d 236 (1976)("[N]o due process protections were required upon the discretionary transfer of state prisoners to a substantially less agreeable prison, even where that transfer visited a 'grievous loss' upon the inmate. The same is true of prisoner classification and eligibility for rehabilitative programs in the federal system."). The Fourth Circuit has specifically stated that "[t]he federal constitution itself vests no liberty interest in inmates retaining or receiving any particular security or custody status '[a]s long as the [challenged] conditions or degree of confinement . . . is within the sentence imposed . . .   And is not otherwise violative of the Constitution." Slezak v. Evatt, 21 F.3d 590, 594 (4th Cir. 1994), cert. denied, 513 U.S. 889, 115 S.Ct. 235, 130 L.Ed.2d 158 (1994); see also Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995)(finding that "a prison inmate does not have a protectable liberty or property interest in his custodial classification and an inmate's disagreement with a classification is insufficient to establish a constitutional violation"); Posey v. Dewalt, 86 F. Supp.2d 565, 571 (E.D.Va. 1999), appeal dismissed by, 215 F.3d 1320 (4th Cir. 2000), cert. denied, 531 U.S. 971, 121 S.Ct. 411, 148 L.Ed. 318 (2000)(stating that "[p]ut simply, petitioner has not stated a due process claim because

23

he has no protected liberty interest in a particular classification within BOP"). Furthermore, neither Section 3621(b) nor the BOP's Program Statement (P.S. 5100.08) contain explicit mandatory language or standards limiting the BOP's discretion, which may have given rise to a protected liberty interest in a particular security classification. Title 18, U.S.C. § 3621(b) clearly vests the BOP with broad discretionary authority as to prisoners' placement and classification while incarcerated. 18 U.S.C. § 3621. The language of this statute which provides that the "Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability . . . that the Bureau determines to be appropriate and suitable," is clearly permissive; the statute does not *mandate* that the BOP place a prisoner in a certain facility.[4] Additionally, P.S. 5100.08 allows the BOP to use its "professional judgment" in deciding an inmate's classification. Specifically, P.S. 5100.08[5] states as follows:

> It should be clearly understood that the Custody Classification Form only recommends an inmate's custody. The Unit Team and/or Warden is the final review authority. The intent of the Custody Classification system is to permit staff to use professional judgment within specific guidelines.

---

[4]  Title 18 U.S.C. § 3621 provides that the BOP may consider the following in determining placement of prisoners:
    (1) the resources of the facility contemplated;
    (2) the nature and circumstances of the offense;
    (3) the history and characteristics of the prisoner;
    (4) any statement by the court state imposed the sentence - -
        (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
        (B) recommending a type of penal or correctional facility as appropriate; and
    (5) any pertinent policy statement issued by the Sentencing Commission pursuant to 994(a)(2) of Title 28.

[5]  P.S. 5100.08 sets forth the BOP's policies and procedures for the inmate classification system. P.S. 5100.08 provides that "classification of inmates is necessary to place each inmate in the most appropriate security level institution that also meets their program needs and is consistent with the Bureau's mission to protect society."

24

P.S. 5100.08, Chapter 6, p. 1. Thus, the "classification and transfer of inmates among authorized institutions is peculiarly an administrative function fully within the discretion given to prison officials." O'Bar v. Pinion, 953 F.2d 74, 84 (4th Cir. 1991); also see Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)(stating that "[p]rison administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security"). Even assuming Plaintiff's custody level is incorrect, such an error does not rise to the level of a due process violation. As stated above, an inmate does not have a constitutional right to a specific security classification, and custody classifications do not create a major disruption in a prisoner's environment. See Thuan Minhn Pham v. Saad, 2018 WL 1377395, * 3 (N.D.W.Va. March 19, 2018)(evening assuming plaintiff's "Deportable Alien" Public Safety Factor was incorrect, such did not rise to the level of a due process violation); Grayson v. FBOP, 2011 WL 7154384, * 5 (N.D.W.Va. July 22, 2011)(dismissing inmate's due process claim based upon his allegation that the BOP incorrectly applied a Sex Offender Public Safety Factor because the inmate had no liberty interest in his custody classification.)

Furthermore, the BOP's determination concerning Plaintiff's security level does not constitute an "atypical and significant hardship" on Plaintiff in relation to the ordinary incidents of prison life. See Sandin v. Conner, 515 U.S. at 482, 115 S.Ct. at 2299; Franklin v. District of Columbia, 163 F.3d 625, 634-35 (D.C. Cir. 1998)(Issues of housing and transfers are issues which occur within the "day-to-day management of prisons."); also see Hinton v. Federal Bureau of Prisons, 2009 WL 3347158, * 3 (S.D.W.Va. Oct. 14, 2009)(J. Johnston)("While Plaintiff's security level causes him to be in a facility which may cause him hardship, the hardship that he faces is not

due to a violation of Plaintiff's liberty interests. In addition, Plaintiff does not fall under the *Sandin* protection because his hardship is not one that is significant or atypical compared to other inmates. Furthermore . . . Plaintiff has no liberty interest in receiving a specific security level designation."). Because nothing in the record indicates that Plaintiff's conditions of confinement were atypical or resulted in a significant hardship, the undersigned finds that Plaintiff has failed to demonstrate a due process violation. Thus, Plaintiff does not possess a constitutionally protected interest in his inmate classification and his above claim should be dismissed.

### (ii)    *Accardi Doctrine:*

In their Motion, Defendants argue that "the *Accardi* Doctrine does not apply to inmates' Bivens actions against BOP employees." (Document No. 66 and Document No. 67, pp. 19 – 22.) Defendants explain that "[e]ven though the BOP has established a telephone program for inmates, the BOP rules, regulations and policies respecting PSF and telephone restrictions do not provide inmates with any constitutionally protected and enforceable interests." (Document Nos. 67, p. 20.) Second, Defendants contend that "there is no basis for individual liability against the Defendants" because the focus of an action brought pursuant to the Accardi doctrine is the agency failure to afford procedural safeguards under its own regulations. (Id., pp. 20 – 21.) Third, Defendants argue that the *Accardi* Doctrine does not permit an award of monetary damages. (Id., p. 21.) Finally, Defendants argue that Plaintiff's claim is moot because the Warden has now reviewed and approved Plaintiff's telephone restrictions in accordance with BOP policy. (Id.)

In Response, Plaintiff argues that BOP staff did not review his PSF and telephone restrictions in accordance with Federal Regulations or BOP Policy. (Document No. 74, pp. 1 - 3.) Plaintiff contends that Defendants conceded he was not given one phone call for a year. (Id., p. 2.)

Thus, Plaintiff argues that Defendants violated P.S. 5264.08(13)(B)(4) and (6). (Id.) Plaintiff states that this "hurt Plaintiff and his family." (Id.)

The *Accardi* Doctrine provides that when an agency fails to follow its own procedures and regulations, that agency's actions are generally invalid. See United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954); also see Nader v. Blair, 549 F.3d 953, 962 (4th Cir. 2008); United States v. Morgan, 193 F.3d 252, 266-67 (4th Cir. 1999)(Having adopted a policy or regulation, an agency is bound to apply such and its failure to do so can create a due process violation where prejudice has resulted). As stated above, a Bivens action is a judicially created damages remedy which is designed to vindicate violations of constitutional rights by federal actors. See Bivens, 403 U.S. at 395 -97, 91 S.Ct. at 1999. Thus, an action for money damages may be brought against federal agents acting under the color of their authority for injuries caused by their ***unconstitutional*** conduct. As explained above, Plaintiff has no constitutionally protected interest in his inmate classification. Furthermore, this Court has already determined that Plaintiff has no constitutionally protected right to telephone privileges. (Document Nos. 17, 41, and 42.) Thus, Defendants' failure to comply with their own regulations or policies is not cognizable under Bivens. See Bates v. Helman, 175 F.3d 1019 (7th Cir. 1999)(the violation of a Program Statement does not rise to the level of a constitutional violation); Myers v. Klevenhager, 97 F.3d 91, 94 (5th Cir 1996)(failure of prison officials to follow their own internal policies, procedures or regulations alone is insufficient to make out a constitutional violation); Arrick v. Federal Bureau of Prisons, 2019 WL 8301052, * 20 (N.D.W.Va. Dec. 10, 2019)("To the extent that the Plaintiff is attempting to allege that the defendants did not adhere to a statute or administrative regulation, the undersigned notes that a *Bivens* action 'must be founded upon a

violation of constitutional rights,' and 'a failure to adhere to administrative regulations does not equate to a constitutional violation.'")(citations omitted); <u>Woltz v. Carter</u>, 2012 WL 3879961, * 9 fn. 9 (S.D.W.Va. Aug. 8, 2012)("The *Accardi* doctrine is inapplicable in inmates' *Bivens* cases against Bureau of Prison employees.") Therefore, the undersigned respectfully recommends that Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" be granted as to the above claim.

### E.    Plaintiff's claim against Defendants Carver and Rich.

Plaintiff names the following supervisory officials, Associate Wardens Carver and Rich, as Defendants. Plaintiff appears to contend that Defendants Carver and Rich violated his constitutional rights by failing to ensure that Plaintiff received proper medical treatment and proper review of his telephone restrictions. (Document No. 12.) As to Defendant Rich, Plaintiff states that he notified Defendant Rich that he was not being allowed to use the phone.[2] (<u>Id.</u>) As to Defendant Carver, Plaintiff alleges that he notified Defendant Carver on January 19, 2019, that he was in pain and bleeding from his wisdom tooth extraction site. (<u>Id.</u>)

In Defendants' Motion, Defendants Carver and Rich contend that Plaintiff's claim against them are improperly raised based upon supervisory liability. (Document No. 66 and Document No. 67, pp. 22 – 23.) Specifically, Defendants Carver and Rich argue that Plaintiff has not established the requisite personal or supervisory involvement necessary to support <u>Bivens</u> liability and they are entitled to dismissal from this action. (<u>Id.</u>) Plaintiff fails to address the above claim in his Response. (Document No. 74.)

---

[2] As explained above, Plaintiff allegation concerning the restriction on his telephone privileges do not establish a constitutional violation.

"Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." Ashcroft v. Iqbal, 129 S.Ct. at 1948("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); Also see Monell v. Department of Social Services of the City of NY, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Liability, however, may attach to a supervisory official if "conduct directly causing the deprivation was done to effectuate an official policy or custom for which [the official] could be liable." Fisher v. Washington Metro. Area Transit Auth., 690 F.2d 1133, 1142-43 (4th Cir. 1982), *abrogated on other grounds by* County of Riverside v. McLaughlin, 500 U.S. 44, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991). Further, supervisory officials may be liable for acts of their subordinates where "supervisory indifference or tacit authorization of subordinates' misconduct may be a causative fact in the constitutional injuries they inflict on those committed to their care." Slakan v. Porter, 737 F.2d 368, 373 (4th Cir. 1984). Thus, the inquiry for the Court is whether the Defendant individually "acted wantonly, obdurately, or with deliberate indifference to the pervasive risk of harm." Moore v. Winebrenner, 927 F.2d 1312, 1315 (4th Cir. 1991).

Defendants Carver and Rich argue that Plaintiff has failed to demonstrate specifically how they were personally involved in violating any of Plaintiff's constitutional rights. Essentially, Plaintiff alleges that Defendants Carver and Rich violated his constitutional rights with respect to their failure to supervise employees. The evidence of record, however, does not indicate any personal involvement by Defendants Carver or Rich. In order to succeed on a medical claim against non-medical personnel, plaintiff must establish that non-medical personnel were personally

29

involved in a denial of treatment, deliberately interfered with treatment, or tacitly authorized or were indifferent to a prison physician's conduct. Lewis v. Angelone, 926 F. Supp. 69, 73 (W.D.Va. 1996). Non-medical prison personnel may rely on the opinion of the medical staff as to the proper course of treatment. Miltier v. Born, 896 F.2d 848, 854 - 55 (4th Cir. 1990). In the instant case, there is no evidence that Defendants Carver or Rich were personally involved in a denial of treatment to Plaintiff, deliberately interfered with Plaintiff's treatment, or tacitly authorized the prison physicians' conduct. Accordingly, Plaintiff has improperly raised his claim against Defendants Carver and Rich under the doctrine of *respondeat superior* and has failed to establish supervisory liability. The Court therefore finds that Defendants Carver and Rich's "Motion to Dismiss, or in the Alternative Motion for Summary Judgment" should be granted. The undersigned finds it unnecessary to consider the other reasons which the Defendants Carver and Rich have submitted for dismissal.

### F.    No Eighth Amendment Violation by Individual Defendants.

Under the Eighth Amendment, sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." Wolfish v. Levi, 573 F.2d 118, 125 (2d Cir. 1978), *rev'd on other grounds*, Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). See also Farmer v. Brennan, 511 U.S. 825, 832, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994)(Supreme Court noted that Eighth Amendment imposes certain duties upon prison officials to "ensure that inmates receive adequate food, clothing, shelter and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'"), quoting Hudson v. Palmer, 468 U.S. 517, 526 - 27, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984)); Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981)(Court held that only those conditions

depriving inmates of "the minimal civilized measure of life's necessities" are sufficiently grave to form the basis of an Eighth Amendment violation). Sentenced prisoners are therefore constitutionally guaranteed adequate medical care under the Eighth Amendment.

To establish a violation of the Eighth Amendment in the context of a challenge to conditions of confinement, an inmate must allege and prove (1) a "sufficiently serious" deprivation under an objective standard and (2) that prison officials acted with "deliberate indifference" to the inmate's health and safety under a subjective standard. Wilson v. Seiter, 501 U.S. 294, 297 - 99, 111 S.Ct. 2321, 2323 - 2325, 115 L.Ed.2d 271 (1991). A sufficiently serious deprivation occurs when "a prison official's act or omission . . . result[s] in the denial of the minimal civilized measure of life's necessities.'" Id. at 298, 111 S.Ct. 2321 (citing Rhodes v. Chapman, 452 U.S. at 347, 101 S.Ct. 2392)."In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements – that 'the deprivation of [a] basic human need was objectively sufficiently serious,' and that 'subjectively the officials act[ed] with a sufficiently culpable state of mind.'" Shakka v. Smith, 71 F.3d 162, 166 (4ᵗʰ Cir. 1995)(quoting Strickler v. Waters, 989 F.2d 1375, 1379 (4ᵗʰ Cir. 1993)(quotation omitted)). See also White v. Gregory, 1 F.3d 267, 269 (4ᵗʰ Cir. 1991)("In *Strickler*, we held that a prisoner must suffer 'serious or significant physical or mental injury' in order to be 'subjected to cruel and unusual punishment within the meaning of the' Eighth Amendment.") A medical need serious enough to give rise to an Eighth Amendment claim involves a condition which places an inmate at substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment causes continuous severe pain. The Fourth Circuit stated the applicable standard in Miltier v. Beorn, 896 F.2d 848, 851 - 852 (4ᵗʰ Cir. 1990), as follows:

> To establish that a health care provider's actions constitute deliberate indifference
> to a serious medical need, the treatment must be so grossly incompetent, inadequate
> or excessive as to shock the conscience or to be intolerable to fundamental fairness.
> * * * Deliberate indifference may be demonstrated by either actual intent or reckless
> disregard. * * * A defendant acts recklessly by disregarding a substantial risk of
> danger that is either known to the defendant or which would be apparent to a
> reasonable person in the defendant's position. * * * Nevertheless, mere negligence
> or malpractice does not violate the eighth amendment. (Citations omitted)

Miltier, 896 F.2d at 851-52(*recognized in* Sharpe v. South Carolina Dept. of Corr., 621 Fed.Appx. 732, 733 (4th Cir. 2015) *as overruled in part on other grounds by* Farmer, 511 U.S. at 837, 114 S.Ct. 1970); see also Sosebee v. Murphy, 797 F.2d 179, 183 (4th Cir. 1986)(Facts indicating that guards were aware that inmate's condition had worsened and was life-threatening and intentionally ignored the situation and refused to seek medical assistance provided a reasonable basis for finding deliberate indifference to inmate's medical needs.); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978), cert. denied, 446 U.S. 928, 100 S.Ct. 1865, 64 L.Ed.2d 281 (1980)(Pretrial detainee's allegations of delay in treatment of his broken arm indicated a reasonable basis for inferring deliberate indifference to his serious medical needs.); Russell v. Sheffer, 528 F.2d 318 (4th Cir. 1975)(Summary judgment for defendants affirmed where claim that inmate received constitutionally inadequate medical treatment involved a question of medical judgment not subject to judicial review.) Therefore, Plaintiff must first allege and eventually establish a "sufficiently serious" deprivation of adequate medical care and resulting "serious or significant physical or mental injury" in order to maintain and prevail upon his Eighth Amendment claim. Second, to establish the subjective component of deliberate indifference, Plaintiff must allege and prove each defendant's consciousness of the risk of harm to him. See Farmer, supra, 511 U.S. at 840, 114 S.Ct. at 1980. In particular, Plaintiff must establish that each Defendant "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which

the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Farmer</u>, <u>supra</u>, 511 U.S. at 837, 114 S.Ct. at 1979. Plaintiff in this case must therefore allege and establish that each Defendant was aware that he was receiving constitutionally inadequate medical care and disregarded the serious physical consequences.

### (i)    *Defendant Brown:*

In his Second Amended Complaint, Plaintiff contends that Defendant Brown acted with deliberate indifference in violation of the Eighth Amendment by failing to provide Plaintiff with appropriate medical care following the removal of his wisdom teeth on January 10, 2019. (Document No. 12, p. 9.) First, Plaintiff alleges that he did not receive adequate medication following the removal of his wisdom teeth on January 10, 2019. (<u>Id.</u>, p. 9.) Plaintiff alleges that the oral surgeon prescribed Motrin and Augmentin, but Dr. Brown only provided Plaintiff with Ibuprofen – not Augmentin. (<u>Id.</u>) Plaintiff alleges that on January 16, 2019, he suffered from a swollen mouth and neck, pain in his neck and cheek area, swollen lymph nodes, difficulty swallowing, and a "pounding headache." (<u>Id.</u>) Plaintiff states that he reported the above symptoms to Correctional Officers in SHU, and Lt. Martin informed Plaintiff that "no medical staff were present" but he would email medical to come to see Plaintiff first thing in the morning. (<u>Id.</u>) Plaintiff complains that medical never came to see him. (<u>Id.</u>)

In their Motion, Defendants argue that Plaintiff cannot establish an Eighth Amendment medical claim of deliberate indifference against Defendant Brown. (Document No. 66 and Document No. 67, pp. 23 - 33.) Defendants argue that even assuming Plaintiff's medical need was objectively serious, Plaintiff cannot satisfy the subjective components. (<u>Id.</u>) Defendants contend that Plaintiff was provided with timely and proper medical treatment. (<u>Id.</u>) In Response, Plaintiff contends he received inadequate medical care because he was never provided with the prescribed

antibiotics and he was denied Ibuprofen for two weeks. (Document No. 74, pp. 4 - 7.)

First, Plaintiff contends that Defendant Brown acted with deliberate indifference by failing to provide appropriate post-op medical care following his wisdom tooth extraction. For purposes of an Eighth Amendment claim, a medical need is serious if it involves a condition which places an inmate at substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment causes continuous severe pain. Plaintiff alleges that his post-op condition caused pain and suffering. Accordingly, the undersigned will assume for purposes of this motion that Plaintiff's medical need was serious enough to give rise to an Eighth Amendment claim.

Next, the undersigned will consider whether the Defendant Brown acted with deliberate indifference to Plaintiff's health and safety under a subjective standard. To satisfy the subjective component, Plaintiff must allege Defendant Brown's consciousness of the risk of harm to him. See Farmer, supra, 511 U.S. at 840, 114 S.Ct. at 1980. A review of Plaintiff's medical records reveal that Plaintiff's wisdom teeth were removed by Dr. Krstal Thompson, an "outside" oral surgeon, on January 10, 2019. (Document No. 73, pp. 14 - 16.) It was noted that Plaintiff tolerated the procedure without complications. (Id.) Dr. Thompson recommended the administration of Motrin for pain and Augmentin as an antibiotic. (Id.) Plaintiff returned to the institution on the same day, where he was evaluated by Defendant Brown, the Chief Dental Officer at FCI McDowell. (Id., pp. 12 - 13.) Plaintiff reported no complications or issues. (Id.) Defendant Brown provided Plaintiff with a prescription for 800 mg Ibuprofen tablets for self-administration and instructed Plaintiff to take the medication three times a day for seven days. (Id.) Dr. Brown instructed Plaintiff to return to sick call if he had any post-op problems. (Id.) Dr. Brown did not prescribe the recommended Augmentin (antibiotic) because Plaintiff exhibited no signs of infection. (Document No. 66-1, p.

34

45.) On January 16, 2019, Plaintiff was evaluated at Health Services prior to his placement in

SHU. (Document No. 73, pp. 8 – 9.) Plaintiff did not report any pain or issues related to his wisdom

teeth extraction. (Id.) Medical staff noted no signs of distress and Plaintiff denied any injuries. (Id.)

Plaintiff's medical records reveal that Plaintiff failed to report any further complaints concerning

the removal of his wisdom teeth. Plaintiff's commissary records, however, reveal that Plaintiff

made purchases of over-the-counter Ibuprofen on January 23, 2019. (Document No. 66-1, p. 56.)

 Plaintiff first argues that he received inadequate medical care because he was denied

Ibuprofen for two weeks[3] following the removal of his wisdom teeth. The undersigned first finds

that Plaintiff's bare assertions without producing a scintilla of evidence is insufficient to create a

genuine dispute of material fact. Even assuming the foregoing as true, the undersigned finds that

Plaintiff cannot establish a claim of deliberate indifference. Specifically, Plaintiff has not

established that Defendant Brown knew of, and disregarded, Plaintiff's need for Ibuprofen. The

record clearly reveals that Defendant Brown prescribed Ibuprofen to Plaintiff on the same day of

his oral surgery and Plaintiff was instructed to return to sick call if he experienced any post-op

problems. Additionally, it is undisputed that Plaintiff was in general population until January 16,

2019. Despite the foregoing, there is no indication that Plaintiff returned to sick call reporting his

alleged inability to obtain the prescribed Ibuprofen. Furthermore, Plaintiff was clearly evaluated

by medical staff prior to his placement in SHU, and Plaintiff again failed to notify medical staff of

his need for pain medication. Finally, Plaintiff's commissary receipt reveal Plaintiff purchased

---

[3] The undersigned notes that allegations contained in Plaintiff Second Amended Complaint
contradict the allegations contained in Plaintiff's Response. In his Second Amended Complaint,
Plaintiff complains that on January 10, 2019, Dr. Brown only provided Plaintiff with Ibuprofen
and not antibiotics. Thus, Plaintiff acknowledged that Dr. Brown prescribed him with pain
medication on January 10, 2019.

Ibuprofen on January 23, 2019.[4]  Accordingly, there is no indication that Defendant Brown knew of, and disregarded, Plaintiff's need for pain medication. At most, Defendant Brown may have been negligent in failing to ensure that Plaintiff received the prescribed Ibuprofen following the oral surgery. It is well recognized, however, that "negligent medical diagnoses or treatment, without more, do not constitute deliberate indifference." Webb v. Hamidullah, 281 Fed.Appx. 159, 166 (4th Cir. 2008); also see Sosebee v. Murphy, 797 F.2d 179, 181 (4th Cir. 1986)("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."). Accordingly, the undersigned finds that Defendant Brown did not act with deliberate indifference in failing to prescribe pain medication to Plaintiff following the removal of his wisdom teeth.

Next, Plaintiff complains that Defendant Brown completely failed to provide him with the antibiotic prescribed by the oral surgeon. Defendant Brown, however, explains that she failed to prescribe the suggested antibiotic because Plaintiff exhibited "no signs of infection that would have required the administration of antibiotics." Additionally, there is no allegation or indication that Plaintiff suffered from an infection following the removal of his wisdom teeth. Although Plaintiff may have preferred treatment with antibiotics as a precautionary measure, this does not establish deliberate indifference. An inmate's disagreement with his medical care or the course of treatment for an objectively serious medical injury generally will not constitute a sufficient basis for a constitutional claim. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). "[T]he Fourth Circuit has observed that an inmate's treatment may be limited to what is medically necessary as opposed to 'that which may be considered merely desirable' to the inmate." Malcomb v. Raja,

---

[4]  The undersigned notes that Plaintiff on had a seven-day prescription for 800 mgs of Ibuprofen. (Document No. 73, p. 12.)

2010 WL 3812354, at * 1 - 2 (S.D.W.Va. Sept. 22, 2010)(quoting <u>Bowring v. Godwin</u>, 551 F.2d 44, 47-48 (4th Cir. 1977)(finding that plaintiff was provided medication for his pain and "Defendants' decision to provide plaintiff with one medication over another does not give rise to a constitutional violation."); <u>Johnson v. Proctor</u>, 2016 WL 165020, at * 6 – 7 (N.D.W.Va. Jan. 14, 2016)(finding that inmate's allegations that the physician made no attempts to diagnose his head injury, provide treatment other than Tylenol, or order a MRI or CT scan were insufficient to state a claim upon which relief could be granted under the Eighth Amendment). To the extent Plaintiff claims that Dr. Thompson's treatment plan was better than Dr. Brown's treatment plan, this does not state a constitutional violation. <u>See</u> <u>Lewis v. Proctor</u>, 2010 WL 148383, * 3 (N.D.W.Va. Jan. 12, 2010)(an inmate's belief that one doctor's treatment plan was better than another's does not state a constitutional violation); <u>Oglesby v. Abbassi</u>, 2013 WL 4759249, * 7, n. 12 (E.D.Va. Sep. 4, 2013)("certainly no claim is stated when a doctor disagrees with the professional judgment of another doctor"). Accordingly, the undersigned finds that Defendant Brown did not act with deliberate indifference in failing to prescribe antibiotics to Plaintiff following the removal of his wisdom teeth. The Court therefore finds that Defendant Brown's "Motion to Dismiss, or in the Alternative Motion for Summary Judgment" should be granted. The undersigned finds it unnecessary to consider the other reasons which Defendant Brown has submitted for dismissal.

### (ii)    *Defendant Copolo:*

In his Second Amended Complaint, Plaintiff alleges that Defendant Copolo failed to provide him with adequate medical care for his skin problems from March 20, 2019, until June 2019. (Document No. 12, pp. 10 – 12.) Plaintiff alleges that he submitted sick call requests to R.N. Walters in March and April 2019, complaining of dry red spots that were burning and increasing in size on his knees, hands, legs, and elbows. (<u>Id.</u>, p. 10.) Plaintiff complains that he was not

evaluated by Defendant Copolo until May 2, 2019. (Id., p. 11.) Plaintiff acknowledges that Defendant Copolo diagnosed him with dry skin on May 2, 2019, and instructed Plaintiff to buy Dove soap from the commissary. (Id.) Plaintiff, however, complains that he was only allowed to purchase the Dove soap on one occasion, and SHU staff are now prohibiting all "white soap bars in SHU." (Id.) Plaintiff further complains that medical has not prescribed any other treatment for his skin problems and his rash is "spreading and is getting worse." (Id.) Plaintiff alleges that PA Copolo failed to ensure that Plaintiff received medical care by not responding to his sick call requests. (Id.) Plaintiff alleges that PA Copolo did not do anything to treat his skin condition for "4 months straight and she quit working at McDowell also." (Id.)

In their Motion, Defendants argue that Plaintiff cannot establish an Eighth Amendment medical claim of deliberate indifference against Defendant Copolo. (Document No. 66 and Document No. 67, pp. 23 - 33.) First, Defendant Copolo argues that Plaintiff cannot satisfy the objective component. (Id., pp. 24 – 27.) Even assuming Plaintiff could satisfy the objective component, Defendant Copolo contends that Plaintiff cannot satisfy the subjective component because there is no culpable state of mind. (Id., pp. 28 - 31.) Defendant Copolo states that Plaintiff received timely and appropriate medical care for his skin condition. (Id.) Defendant Copolo argues that Plaintiff merely disagrees over the appropriate course of treatment, which does not rise to the level of a constitutional violation. (Id.) In Response, Plaintiff contends he received inadequate medical care because Defendant Copolo failed to ensure that he received Dove soap for his skin condition. (Document No. 74, p. 4.) Plaintiff claims that he "did not purchase the Dove soap in commissary" because "Plaintiff was restricted from buying white bars of soap because he was in the SHU." (Id.)

First, the undersigned will consider whether Plaintiff can satisfy the objective standard. For

38

purposes of an Eighth Amendment claim, a medical need is serious if it involves a condition which places an inmate at substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment causes continuous severe pain. See Estelle, supra, 429 U.S. at 104, 97 S.Ct. 291(A "serious" medical need exists when failure to treat the condition will result in significant injury or "unnecessary and wanton infliction of pain"). Viewing the evidence in a light most favorable to Plaintiff, the undersigned finds that Plaintiff's skin condition did not constitute a "serious" medical need. Specifically, it is undisputed that Plaintiff suffered from dry skin or eczema. The undersigned finds that dry skin or eczema does not constitute an objectively serious medical condition. See Tsakonas v. Cicchi, 308 Fed.Appx. 628, 632 (3rd Cir. 2009)(finding denial of treatment for "weight loss, eczema of the feet, seborrhea of the scalp, athlete's foot, constipation, and swollen knuckles on his right hand" failed to allege a serious medical condition); Sledge v. Kooi, 564 F.3d 105 (2nd Cir. 2009)(finding that eczema, back pain, stomach disorders, allergies, and asthma did not constitute a "serious medical need"); Riddick v. Modeny, 250 Fed.Appx. 482 (3rd Cir. Oct. 9, 2007)(concluding that failure to provide medications prescribed for eczema did not demonstrate deliberate indifference to a serious medical need); Tasby v. Cain, 86 Fed.Appx. 745 (5th Cir. 2004)(finding that the development of a rash as a result of being placed in restraints does not establish that the inmate suffered "serious harm"); Williams v. Tomlin, 191 F.3d 454 (6th Cir. 1999)(concluding that a prisoner's claims of a burning sensation and bleeding after applying medicated skin cream to his face was not a serious medical need where nurse noted that the prisoner had no "blistering redness," but merely a few patches of dry skin); Jones v. Gujral, 2018 WL 3451460, * 12 (E.D.Va. July 17, 2018)("bald complaints of dry skin and skin rashes fail to state a sufficiently serious medical need"); Germain v. Bishop, 2018 WL 1453336, * 9 (D.Md. March 23, 2018)(finding that objectively, dry skin is not a serious medical need); Francis v.

Western Correctional Institution, 2017 WL 3500401, * 3 (D.Md. Aug. 14, 2017)(finding that plaintiff's allegations of arthritis, eczema, and allergies, without further detail, do not rise to the level of sufficiently serious medical need); Degree v. State Employee, 2010 WL 5257230 (D.S.C. Nov. 8, 2010)(Although plaintiff's allegations of itching and burning feet may constitute an uncomfortable medical condition, such did not constitute an objectively serious medical need); Witherspoon v. Africa, 2010 WL 4183508, * 2 (D.Md. Oct. 25, 2010)(finding dry skin and rashes do not constitute a "serious medical need"); Thompson v. Carolsen, 2010 WL 3584409, * 6 (N.D.N.Y. Aug. 16, 2010)(concluding that inmate's "dry, cracked and itchy skin" does not meet the objective standards of an serious medical condition); McKeithan v. Beard, 2010 WL 2028091, * 1 – 5 (W.D.Pa. April 12, 2010)(finding that excessive itching and dry skin is not a serious medical condition); Allen v. Gaskins, 2010 WL 1010014 (D.S.C. Feb. 18, 2010)(concluding that Scabies, a skin condition that is an contagious infestation of the skin with an itch mite, was not a serious medical need); Gonzalez-Reyna v. Ellis, 2009 WL 2421482, * 3 (E.D.Va. July 27, 2009)("[I]t is doubtful that a skin rash, even one which causes pain and itching, is a sufficiently serious medical need to support an Eighth Amendment violation."); Henderson v. Gordineer, 2007 WL 840273, * 5 (D.S.C. 2007)(concluding that dry skin that merely required treatment with Dove soap, lotion, and a shampoo was not a "serious medical need"); and Samuels v. Jackson, 1999 WL 92617, * 1 – 3 (S.D.N.Y. Feb. 22, 1999)(finding prisoner's claim of intense itching from eczema did not constitute a "serious medical need"). Accordingly, the undersigned finds that Plaintiff cannot satisfy the objective standard.

Further, there is no indication that Defendant Copolo was aware of facts from which an inference could be drawn that a substantial risk of serious harmed existed, or that Defendant Coakley drew that inference. On January 16, 2019, Plaintiff was evaluated by RN Nicole Dufour

prior to his placement in SHU. (Document No. 73, pp. 8 – 9.) Plaintiff did not report any pain or issues related to his skin condition. (Id.) RN Dufour noted no signs of distress and Plaintiff denied any injuries. (Id.) Plaintiff's commissary records reveal that on January 23, 2019, Plaintiff purchased hypo-allergenic soap, lotion, and hydrocortisone cream. (Document No. 66-1, p. 56.) Plaintiff again purchased hypo-allergenic soap on January 30, 2019 and February 6, 13, 20, and 27, 2019. (Id., pp. 57 – 61.) On April 10, 2019, Plaintiff purchased Tolnaftate cream. (Id., p. 66.) On May 1, 2019, Plaintiff purchased Bacitran ointment. (Id., p. 69.) On May 2, 2019, Plaintiff reported to medical staff that his skin was breaking out. (Document No. 73, pp. 6 – 7.) Plaintiff was evaluated by PA Chandra Carothers, who prescribed triamcinolone ointment and provided a commissary slip for Dove soap. (Id.) Plaintiff's commissary receipts reveal that Plaintiff purchased the Dove soap and hydrocortisone cream on May 8, 2019.[5] (Document No. 70.) On June 6, 2019, Plaintiff notified Defendant Copolo that he needed another commissary slip for Dove soap and fiber tablets for his constipation. (Document No. 73, p. 5.) Defendant Copolo provided Plaintiff with a commissary slip for both items. (Id.) Plaintiff's commissary records reveal that Plaintiff did not purchase the Dove soap, but he purchased the fiber pills on June 19, 2019. (Document No. 66-1, p. 74.) Plaintiff made no other requests from medical services prior to the filing of his Second Amended Complaint on July 19, 2019. The record reveals that Plaintiff was examined by PA Carothers on August 29, 2019, who noted that Plaintiff had "dry patchy skin consistent with eczema." (Document No. 73, pp. 2 – 5.) PA Carothers prescribed triamcinolone ointment and instructed Plaintiff to "use Dove soap, non-scented lotions, cool showers, and gently pat dry." (Id.)

As stated above, Plaintiff alleges that Defendant Copolo provided inadequate medical care

---

[5] A commissary slip allows inmates to purchase an otherwise restrict item from the commissary.

March 20, 2019, until June 2019. First, Plaintiff claims Defendant Copolo failed to respond to his sick call requests. Although Plaintiff complains that Defendant Copolo failed to respond to his sick call requests, Plaintiff acknowledges that his sick call requests were given to RN Walters in March and April, 2019. There is no evidence that Defendant Copolo knew of, and disregarded, Plaintiff's requests for medical care. The record clearly reveals that when Plaintiff notified Defendant Copolo on June 6, 2019, that he needed another commissary slip for Dove soap and fiber tablets, and Defendant Copolo provided Plaintiff with a commissary slip for both items. Although Plaintiff complains that the Captain subsequently prevented him from purchasing the Dove soap due to a SHU policy against "white soap," this does not support an allegation of deliberate indifference by Defendant Copolo. Specifically, there is no indication that Defendant Copolo knew Plaintiff would be prevented from purchasing Dove soap and disregarded such. Specifically, the record reveals that on May 8, 2019, Plaintiff was allowed to purchase Dove soap with a commissary slip despite his placement in SHU. To the extent Plaintiff argues that Defendant Copolo should have provided some type of alternative treatment for his skin condition, an inmate's disagreement with his course of treatment generally will not constitute a sufficient basis for a constitutional claim. Wright, 766 F.2d at 849; also see Malcomb, 2010 WL 3812354, at * 1 – 2. The Court therefore finds that Defendant Copolo's "Motion to Dismiss, or in the Alternative Motion for Summary Judgment" should be granted.

Based upon the foregoing, the undersigned finds it unnecessary to consider the other reasons which the Defendants have submitted for dismissal regarding Plaintiff's claims.

## PROPOSAL AND RECOMMENDATION

The undersigned therefore respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court District Court **DENY**

42

Plaintiff's letter-form Motion for Default (Document No. 63) and **GRANT in part and DENY in part** the Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 66) and **REMOVE** this matter from the Court's docket. Specifically, the undersigned recommends that Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 66) be **DENIED** as to Defendants' argument that Plaintiff's claims are precluded by his failure to exhaust. The undersigned recommends that Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 66) be **GRANTED** as to the following arguments: (1) Lack of service upon Defendant Goode; (2) Defendant Moore is a U.S. Public Health Service Employee entitled to immunity; (3) The *Accardi* Doctrine does not apply to inmates' <u>Bivens</u> claims against BOP employees; (4) Plaintiff's claim against Defendants Carver and Rich are inappropriately based upon supervisory liability; and (5) Plaintiff cannot establish a claim of deliberate indifference to his medical condition. The undersigned recommends that Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 66) be **DENIED as moot** as to the following arguments: (1) Plaintiff's allegations are not cognizable under <u>Bivens</u> based upon <u>Abbasi</u>; and (2) Defendants are entitled to qualified immunity.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days (filing of objections) and three (3) days (if received by mail) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the

basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Faber and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

Date: November 25, 2020.

Omar J. Aboulhosn
United States Magistrate Judge