IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BLUEFIELD

JEREMY J. HUNT,

    Plaintiff,

v.                                CIVIL ACTION NO. 1:19-00356

MS. M. CARVER, et al.,

    Defendants.

**MEMORANDUM OPINION AND ORDER**

By Standing Order, this action was referred to United States Magistrate Judge Omar J. Aboulhosn for submission of findings and recommendation regarding disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Magistrate Judge Aboulhosn submitted to the court his Proposed Findings and Recommendation ("PF&R") on November 25, 2020,[1] in which he recommended that the court deny plaintiff's letter-form "Motion for Default" (ECF No. 63) and grant in part and deny in part[2] the defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (ECF No. 66); and remove this matter from the court's docket.

---

[1] This is the second PF&R in this case. The first was filed on November 7, 2019. (See ECF No. 14.)

[2] Because the PF&R does not accept all of defendants' arguments, it recommends granting defendants' motion "in part." Nevertheless, the PF&R recommends granting the motion as to all of plaintiff's claims, thereby resolving this case in its entirety. Accordingly, the court understands this recommendation as one simply to grant the defendants' motion.

In accordance with the provisions of 28 U.S.C. § 636(b), the parties were allotted fourteen days and three mailing days in which to file any objections to the PF&R.  The failure of any party to file such objections within the time allowed constitutes a waiver of such party's right to a de novo review by this court.  Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989).

Plaintiff filed two sets of objections:  one signed and dated December 13, 2020, and addressed to "District Judge Faber," and the other signed and dated December 22, 2020, and addressed to the Clerk.  (See ECF Nos. 77-78.)[3]  The two sets of objections appear to be identical, except that the former has a fifth page of objections and the latter includes a certificate of service (also dated December 22, 2020).

Fourteen days from the filing of the PF&R was December 9, 2020.  Adding three days for mailing resulted in a deadline of December 12, 2020, which was a Saturday, thus extending the deadline to December 14, 2020.  The court will consider the December 13, 2020 objections timely.

---

[3] The December 22, 2020 objections appear to be dated in error because the envelope is postmarked December 16, 2020.

2

I.  **Background**

This is a Bivens action[4] in which plaintiff, an inmate in federal custody, claims that prison officials have violated his rights by denying him access to the telephone, to adequate medical and dental care, and to the grievance process. Plaintiff also claims that he has been subjected to cruel and unusual conditions of confinement.

In light of this court's orders of January 6, 2020, and March 20, 2020, the remaining claims are (1) deliberate indifference to plaintiff's medical and dental needs in violation of the Eighth Amendment; and (2) denial of telephone access in violation of the Due Process Clause of the Fifth Amendment and the Accardi doctrine. (See ECF Nos. 41, 61.)

In part, plaintiff's Eighth Amendment deliberate indifference claim concerns allegedly insufficient post-op care after the removal of his wisdom teeth. He alleges that the outside oral surgeon recommended Motrin and Augmentin (an antibiotic), but the Chief Dental Officer at the prison declined to follow the recommendation as to the antibiotic. He alleges that there was a 2-week delay in his receipt of ibuprofen. He alleges that, starting a few days after the oral surgery, he experienced pain and swelling in his mouth and neck, and 6 days

---

[4] See Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971)

after the surgery, he had a severe headache.  The same day, he alleges that was transferred to the Special Housing Unit, that he reported his pain and need for ibuprofen, that he was told medical staff would see him in the morning, and that no medical staff came.  He alleges that in the days that followed, staff were inattentive to his requests for medical assistance and that it was not until 2 weeks after the surgery that he was able to purchase ibuprofen, and an additional 2 days until he received it without purchase from medical staff.  He alleges that he was not seen by medical staff until about 4 months after the surgery.[5]

As further grounds for his deliberate indifference claim, plaintiff alleges that he received insufficient care for his "dry skin and skin problems."  (ECF No. 12, at 7.)  He also alleges a lack of responsiveness to complaints of a sore knee.

Concerning plaintiff's claims regarding lack of telephone access, plaintiff alleges that from the beginning of his incarceration in 2014 until 2018, he was allowed to use the telephone, but when he was transferred to FCI McDowell on August 22, 2018, his access to the telephone was cut off.  He alleges

---

[5] It is unclear from the allegations how long plaintiff's mouth and neck pain persisted.  It appears that when medical staff allegedly saw him on May 2, 2020, this was for complaints unrelated to plaintiff's mouth and neck, including complaints for skin problems and constipation.

that in response to his inquiries, his unit manager told him that he had a "'Public Safety Factor' for serious telephone abuse" and that she would file paperwork to "get [his] phone access approved." (ECF No. 12, at 5.)  He alleges that for ten months he was given the run-around concerning this issue, in violation of certain BOP Program Statements, which provide for review of Public Safety Factor designations ("PSF") every six months and for an ongoing allowance of one telephone call per month despite the PSF.  He also alleges that he should never have received a PSF.  He says that because he has no access to a law library, he is "not exactly sure what rights have been violated," but he "think[s]" the rights at issue would be his right to avoid cruel and unusual punishment and his right to due process.  (ECF No. 12, at 8.)

The first PF&R in this case construed plaintiff's telephone claims as challenges under the Eighth Amendment, due process, and the Accardi doctrine, but not as a challenge under the First Amendment.  Plaintiff did not object to any portion of that PF&R.  Likewise, in plaintiff's opposition to defendants' dispositive motion, plaintiff did not assert a claim under the First Amendment.

On June 26, 2020, plaintiff filed a letter-form motion for default judgment, noting that the deadline for a response from defendants had passed.  (See ECF No. 63.)  On June 29, 2020,

5

defendants filed a motion to file a response to plaintiff's second amended complaint out of time. (ECF No. 64.) On June 30, Magistrate Judge Aboulhosn issued an order finding defendants' neglect excusable and granting defendants' motion. (ECF No. 68.) On November 27, 2020, plaintiff, apparently under the impression that defendants were required to file a reply brief in response to his opposition, filed a 1-page motion for summary judgment. (See ECF No. 76.)

## II. **Plaintiff's Objections**

Plaintiff makes the following objections to the PF&R:

1. It wrongly finds that incarceration without telephone privileges does not amount to a condition of confinement that is atypical and results in a significant hardship.
2. It wrongly finds that there is no constitutional right to use the telephone.
3. It wrongly finds that defendant Brown's alleged conduct fails to meet the subjective prong of the test for deliberate indifference.

## III. **Standard of Review of Pro Se Objections**

Pursuant to Fed. R. Civ. P. 72(b), the court must "make a de novo determination upon the record . . . of any portion of the magistrate judge's disposition to which specific written objection has been made." However, the court is not required to

review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. See Thomas v. Arn, 474 U.S. 140, 149-50 (1985).

Furthermore, de novo review is not required and is unnecessary "when a party makes general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47-48 (4th Cir. 1982); see also United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007) ("[T]o preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection."); McPherson v. Astrue, 605 F. Supp. 2d 744, 749 (S.D.W. Va. 2009) ("[F]ailure to file a specific objection constitutes a waiver of the right to *de novo* review.").

"A document filed *pro se* is 'to be liberally construed.'" Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). Specifically as to objections to a PF&R, courts are "under an obligation to read a *pro se* litigant's objections broadly rather than narrowly." Beck v. Comm'r of Internal Revenue Serv., 1997 WL 625499, at *1-2 (W.D.N.C. June 20, 1997) (citing Orpiano, 687 F.2d at 48).

7

However, objections that are "unresponsive to the reasoning contained in the PF&R" are irrelevant and must be overruled. Kesterson v. Toler, 2009 WL 2060090, at *1 (S.D.W. Va. July 7, 2009) (citing Orpiano, 687 F.2d at 47).

## IV. Discussion

Plaintiff objects to the analysis of his telephone claim under the Fifth Amendment and recharacterizes his telephone claim as one under the First Amendment. He also argues that Dr. Brown's declining to provide him with an antibiotic after his oral surgery amounts to a conscious decision to put his health at excessive risk and that, had he received the antibiotic, his pain, swelling, and headache "could have most likely been avoided." (See ECF No. 78, at 5.)

Plaintiff's objections concerning telephone privileges lack merit. Obviously, the ability to speak to his family on the telephone is very important to plaintiff. Nevertheless, the loss of telephone privileges is not a loss of "liberty" under the Fifth Amendment. The protections of due process are reserved for weightier matters than a preferred means of communication. As to plaintiff's eleventh-hour recharacterization of his telephone claim as one under the First Amendment, it is not well taken. Plaintiff's telephone privileges were withheld (1) as a disciplinary measure and (2) for the public safety. Moreover, although plaintiff suggests

8

that alternative channels of communication were unavailable, the unavailability was only temporary. Finally, Bivens should not be expanded to such a new context.

The objection concerning Dr. Brown also lacks merit. Failure to provide an antibiotic under the facts plaintiff alleges does not amount to cruel and unusual punishment. Moreover, there is no indication that plaintiff suffered an injury reasonably related to not taking an antibiotic, such as an infection.

**a. Objection 1**

Plaintiff objects that, contrary to the PF&R's conclusion, telephone access is a liberty interest under the Due Process Clause of the Fifth Amendment. Specifically, he objects that lack of access to the telephone imposes an atypical and significant hardship on him in relation to the ordinary incidents of prison life under Sandin v. Conner, 515 U.S. 472, 484 (1995).

Stating a procedural due process claim requires alleging "(1) a cognizable liberty or property interest; (2) the deprivation of that interest by some form of state action; and (3) that the procedures employed were constitutionally inadequate." Shirvinski v. U.S. Coast Guard, 673 F.3d 308, 314 (4th Cir. 2012). Thus, the first question in the analysis is always whether there is a liberty or property interest. See Am.

9

Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 59 (1999) (context of Fourteenth Amendment procedural due process). If the answer to this threshold question is no, the analysis is over, and there is no procedural due process claim. See id.

In the prison context, the analysis of whether there is a liberty interest at stake is unique because lawful incarceration necessitates a significant loss of liberty. See Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991).

> Any review, therefore, of prison discretion begins with a recognition that the liberty interest of a convicted defendant is substantially restricted and his confinement is properly subject to the management of prison officials, who for the order of the prison, the safety of prisoners, and the safety of themselves must have broad discretion in the management of the prison.

Id. "The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner." Uraz v. Ingham Cty. Jail, No. 1:19-CV-550, 2019 WL 4292394, at *5 (W.D. Mich. Sept. 11, 2019) (context of Fourteenth Amendment). Although "prisoners do not shed all constitutional rights at the prison gate, . . . [l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." Sandin, 515 U.S. at 485.

10

In the prison context, there is a liberty interest in avoiding restraints which exceed the sentence in an extraordinary and unexpected manner under the Due Process Clause itself. See id. at 484. Cases implicating such an interest are rare; they have involved things like involuntary psychiatric treatment and transfer to a mental institution. See Prieto v. Clarke, 780 F.3d 245, 248 n.2 (4th Cir. 2015); see also Elhady v. Piehota, 303 F. Supp. 3d 453, 463 (E.D. Va. 2017) (noting that "there is no clear test to determine those procedurally protected liberty interests that derive implicitly from the Due Process Clause itself.").

More commonly, there is a liberty interest when the state creates a right and the deprivation of that right would "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484; see Prieto, 780 F.3d at 249 ("Sandin holds that, while a state statute or policy may 'create liberty interests' giving rise to Due Process protection, this is so only if the denial of such an interest 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'").

The right asserted here (telephone access) unquestionably does not spring directly from the Due Process Clause itself. The alleged deprivation is not remotely similar to involuntary

11

psychiatric treatment or transfer to a mental institution. Nor does the asserted right qualify as a state-created right. Lack of telephone access does not impose the kind of atypical and significant hardship that Sandin requires. Uraz v. Ingham Cty. Jail, No. 1:19-CV-550, 2019 WL 4292394, at *6 (W.D. Mich. Sept. 11, 2019) ("Finally, the 10-month limitation on phone privileges did not violate Plaintiff's right to procedural due process, because he did not have a liberty interest in unrestricted telephone use."); Johnson v. Johnson, No. CV 1:17-00608, 2018 WL 3629822, at *2 (S.D.W. Va. July 31, 2018)

Courts have uniformly determined that "there is no constitutional or federal statutory right to the use of a telephone while in prison."); Pinkney v. U.S. Dep't of Justice, No. CIV.A. 1:07CV132, 2009 WL 385476, at *3 (N.D.W. Va. Feb. 17, 2009) ("In his R & R, Magistrate Judge Kaull properly determined that Pinkney does not have a liberty interest in the loss of telephone privileges, and thus his liberty interests were not violated by a lack of procedural due process protections."); Castleberry v. Acker, No. 05-CV-74271-DT, 2006 WL 250019, at *2 (E.D. Mich. Jan. 31, 2006) (twenty-four months' loss of telephone access not atypical and significant); Tanney v. Boles, 400 F. Supp. 2d 1027, 1040 (E.D. Mich. 2005) ("However, an inmate's loss or restriction of telephone privileges for disciplinary reasons is not considered an 'atypical and

12

significant hardship' (even when the disciplinary charges are allegedly false) and, therefore, does not implicate a liberty interest under the Fourteenth Amendment.").

Plaintiff cites no authority to the contrary. Because there is no liberty interest under the Fifth Amendment in access to the telephone, this objection is **OVERRULED**.

### b. Objection 2

Plaintiff next objects to the conclusion that he has no constitutional right to use the telephone. For the first time since this litigation began on May 6, 2019, plaintiff frames his telephone claim as one under the First Amendment. The previous PF&R (ECF No. 17) determined that plaintiff was making a telephone access claim based on the Accardi doctrine and due process. It also explained that no federal constitutional provision or statute creates a right to use the telephone while in prison. Plaintiff did not object, and the court adopted the PF&R. (See ECF Nos. 17, 41.)

The court appreciates that plaintiff is proceeding pro se as a layperson and notes that in his second amended complaint, he freely admitted that he did not know what provisions of the Constitution supported his claim. Therefore, while it appears that plaintiff may have forfeited this objection by not raising it sooner, the court will examine the merits of his claim under the First Amendment.

Plaintiff is correct that he has certain First Amendment rights, even as a prisoner. "Courts have generally concluded that the First Amendment rights retained by convicted prisoners include the right to communicate with others beyond the prison walls." Heyer v. United States Bureau of Prisons, 849 F.3d 202, 213 (4th Cir. 2017); see also Harrison v. Fed. Bureau of Prisons, 464 F. Supp. 2d 552, 555 (E.D. Va. 2006) ("To be sure, inmates have First Amendment rights notwithstanding their incarceration, but these rights are necessarily circumscribed because of the legitimate penological and administrative interests of the prison system.") (citation omitted). "Use of a telephone provides a means of exercising this right." Valdez v. Rosenbaum, 302 F.3d 1039, 1048 (9th Cir. 2002).

"While inmates have a First Amendment right to communicate with family and friends, they do not have a constitutional or statutory right to unlimited or unrestricted telephone access." Tanney, 400 F. Supp. 2d at 1040 (E.D. Mich. 2005). "[I]n the First Amendment context "prisoners have no per se constitutional right to use a telephone." Harrison, 464 F. Supp. at 555. "[T]here is no constitutional or federal statutory right to use of a telephone while in prison." United States v. Alkire, 82 F.3d 411 (4th Cir. 1996). Thus, although plaintiff has the right to communicate outside the prison walls, he does not have a right to his preferred means of doing so.

14

Plaintiff objects that loss of telephone privileges was tantamount to a loss of the First Amendment right to communicate with the outside world because his alternative means of communication were cut off: the mail, because of problems with contraband in the prison; email, because he was in the Special Housing Unit; and in-person visits, because he was incarcerated too far away from his family. There is no indication, however, that these alternative means were permanently or completely rendered ineffective.

Moreover, plaintiff's telephone access was suspended for disciplinary reasons and for public safety, not "for no reason." (See ECF No. 78, at 1.) Defendants have explained that when plaintiff arrived at FCI McDowell, he was subject not only to a PSF, but to a sanction of loss of telephone privileges for 120 days. (See ECF No. 67, at 2-4.) "[A] prisoner's right to telephone access, if any, is subject to rational limitation based upon legitimate security and administrative interests of the penal institution." Harrison, 464 F. Supp. at 555. Such legitimate interests were present here. Although plaintiff complains that the process leading to this restriction was not sufficient, his due process claim fails for the reasons explained above.

Finally, even if plaintiff had alleged a cognizable First Amendment violation, this would be a new Bivens context. The

15

Supreme Court has never expanded Bivens to the First Amendment context, and the Fourth Circuit recently rejected an attempt to do so. See Earle v. Shreves, No. 19-6655, 2021 WL 896399, at *3, 5 (4th Cir. Mar. 10, 2021).

Therefore, this objection is **OVERRULED**.

**c. Objection 3**

Finally, plaintiff objects to the finding that Dr. Brown was not deliberately indifferent when she allegedly decided not to prescribe plaintiff an antibiotic following the removal of his wisdom teeth. He says that he pushed his medical button for help on January 16, 2020 (six days after the surgery), and a previously dismissed defendant, Lt. Martin, told him someone would see him in the morning, but no one arrived in the morning. He also says that his requests "to be seen by dental" were not granted. (ECF No. 78, at 4.) He says that Dr. Brown did not ensure that he received the Motrin that she prescribed and did not prescribe him an antibiotic; by not prescribing an antibiotic, Dr. Brown ignored the "serious complications that could have resulted." (ECF No. 78, at 5 (emphasis added).) He also suggests that he would not have had as much pain, or a headache, had he been taking an antibiotic.

The objective and subjective elements of deliberate indifference are, respectively, (1) the existence of a serious medical condition afflicting an inmate; and (2) a state actor's

16

knowledge of, and disregard for, "an excessive risk to" the inmate's "safety or health" arising from that medical condition. Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014). (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). If there is no deliberate indifference, there is no "cruel and unusual punishment" under the Eighth Amendment. See id.

"Deliberate indifference is a high standard." DePaola v. Clarke, 394 F. Supp. 3d 573, 594 (W.D. Va. 2019); see also Jackson, 775 F.3d at 178 ("exacting"); Formica v. Aylor, 739 F. App'x 745, 755 (4th Cir. 2018) ("a high bar"); Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999) ("very high"). The question is not whether the state actor should have known of the risk, but whether the state actor "had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." Jackson, 775 F.3d at 178. Knowledge of facts from which an inference of excessive risk could be drawn is not enough; the state actor must actually draw such an inference. Farmer, 511 U.S. 825 at 837. This is because the Eighth Amendment protects against punishments, not conditions. Id. at 838.

Accordingly, unless the state actor actually knows he is putting an inmate's safety or health at an excessive risk, and chooses to do so anyway, his ultimately harmful action or inaction, "while no cause for commendation," is not "the

17

infliction of punishment." Id. "The necessary showing of deliberate indifference can be manifested by prison officials in responding to a prisoner's medical needs in various ways, including intentionally denying or delaying medical care, or intentionally interfering with prescribed medical care." Formica, 739 F. App'x at 754 (emphasis in original). Courts should be mindful of the different interests that tort law and the Eighth Amendment serve. Farmer, 511 U.S. at 838; see also Petties v. Carter, 836 F.3d 722, 736 (7th Cir. 2016) (Easterbrook, J., dissenting) (courts should not "constitutionalize tort law").

Here, the part of the objection that actually involves Dr. Brown is basically that she put plaintiff at risk by not prescribing an antibiotic. Defendants contend that Dr. Brown exercised her reasonable medical judgment not to prescribe an antibiotic when she examined plaintiff after the surgery and found no signs of infection. To disagree with a doctor's medical judgment is not to state a claim for a violation of the Eighth Amendment. See Estelle, 429 U.S. at 107; Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

Declining to prescribe an antibiotic after examining a patient who has undergone oral surgery does not amount to running an excessive risk with the patient's health. Most likely, it does not even amount to medical malpractice.

Moreover, plaintiff did not experience an infection, and his allegations that an antibiotic would have alleviated his pain are not plausible. Additionally, defendant's contention that Dr. Brown was deliberately indifferent because she did not ensure that he received the Motrin that she prescribed is meritless. At most, such failure would be the result of negligence.

Therefore, this objection is **OVERRULED**.

## V. Conclusion

The court has reviewed the record, the Magistrate Judge's findings and recommendations, and plaintiff's objections. For the reasons discussed above, plaintiff's objections are **OVERRULED**.

The court adopts the Findings and Recommendation of Magistrate Judge Aboulhosn as follows:

1. Plaintiff's letter-form motion for default (ECF No. 63) is **DENIED**;
2. Defendants' motion to dismiss, or in the alternative, motion for summary judgment (ECF No. 66) is **GRANTED**;[6] and

---

[6] The court adopts the PF&R's findings as to the arguments upon which this motion is (and the arguments upon which this motion is not) granted, but the court finds it more accurate to specify that the motion is "granted" (as opposed to "granted in part and denied in part"). The court appreciates the diligent attention

19

    3.    The Clerk is directed to remove this case from the court's active docket.[7]

The Clerk is further directed to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented parties.

    **IT IS SO ORDERED** this 30th day of March, 2021.

                                ENTER:

                                David A. Faber
                                Senior United States District Judge

---

to this case on the part of the Magistrate Judge, as is clear from the thoroughness of the 44-page PF&R.
[7] Plaintiff's letter-form motion for summary judgment (ECF No. 76) is **DENIED** as moot.